74 A.3d 927

NEW JERSEY DIVISION OF CHILD PROTECTION AND PER-MANENCY, PLAINTIFF–RESPONDENT, v. C.S., DEFEN-DANT, AND J.C., DEFENDANT–RESPONDENT.

IN THE MATTER OF J.C. AND N.C., MINORS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Telephonically Argued May 7, 2013—Decided May 30, 2013.

Before Judges FISHER, ALVAREZ and WAUGH.

*Kristin Nanette Briggs*, Assistant Deputy Public Defender, argued the cause for minors-appellants (*Joseph E. Krakora*, Public Defender, Law Guardian, attorney; *Nancy P. Fratz*, Assistant Deputy Public Defender, of counsel; *Ms. Briggs*, on the brief).

*James Gentile*, Deputy Attorney General, argued the cause for respondent Division of Child Protection and Permanency (*Jeffrey S. Chiesa*, Attorney General, attorney; *Lewis A. Scheindlin*, Assistant Attorney General, of counsel; *Reid Adler*, Deputy Attorney General, on the brief).

*Evan S. Goddard* argued the cause for respondent J.C.

*James E. Drake* argued the cause for intervening respondents A.S. and E.T. (*Drake Law Firm*, attorneys; *Mr. Drake*, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

Defendants J.C. and C.S. are the parents of three children, who we will refer to by the fictitious names, Arthur, Jane, and Nicholas. Jane and Nicholas were born on February 12, 2012, and February 13, 2013, respectively, well after the commencement of the pending litigation concerning Arthur.[1]

On February 29, 2012, the Division commenced a separate action with respect to Jane that led to her placement with the same foster home in which Arthur resided.

A week after Nicholas was born, the Division filed an amended complaint, seeking custody of him as well. At that time, A.S. and E.T., the children's maternal grandparents,[2] sought custody of Nicholas in the context of the pending action; they also sought custody of Jane in a separate custody action.[3] Nicholas was placed with the grandparents by order entered on February 20, 2013. Following an evidentiary hearing, which consisted of the testimony of C.S., a Division caseworker and the grandparents,

---

[1] Arthur was born on July 1, 2009. A Title Nine action was commenced by the Division in early 2010 and, a year later, the trial court approved a permanency plan calling for termination of parental rights. A guardianship action concerning Arthur was filed on May 18, 2011, and trial was scheduled to begin March 26, 2013. We were more recently advised that the guardianship trial was started and, according to the Law Guardian, the final day of trial is scheduled to occur on June 24, 2013.

[2] The Law Guardian has referred to these parties as the child's maternal great uncle and aunt. Although they are C.S.'s uncle and aunt, they have been referred to by others as the grandparents of C.S.'s children because in 1995 they obtained custody of C.S.; they did not, however, adopt her. We will refer to these parties as the grandparents for convenience's sake only.

the trial judge entered an order on March 4, 2013, transferring custody of Jane to the grandparents despite the Law Guardian's objection that a bonding evaluation concerning Jane's relationship with the foster family should have been conducted prior to any change. The judge found that placement with a relative was preferable regardless of what a bonding evaluation concerning the foster family might show.

We permitted the filing of a motion for leave to appeal on an expedited basis, and on March 14, 2013, among other things, we granted leave to appeal, stayed the transfer of custody, but also granted the grandparents liberal visitation with Jane pending our disposition of this appeal. We also imposed an expedited briefing schedule so that we could resolve, as soon as practicable, the issue addressed by this interlocutory appeal which we described in our March 14, 2013 order as: "whether a plenary 'best interests' hearing should have been conducted by the trial court before a transfer of custody to the maternal grandparents."

As noted, the hearing that led to the entry of the order under review consisted of the testimony of C.S., a Division caseworker and the maternal grandparents. This testimony revealed that the maternal grandparents had not been involved prior to the placement of Nicholas with them because the children's mother did not disclose the maternal grandparents as an available resource until December 2012. The information provided during the hearing revealed that the maternal grandparents were quite capable of providing a suitable home for Jane. The judge ruled that an evaluation of whether a bond had formed between Jane and the foster family was irrelevant in light of the availability of a suitable relative and transferred custody to the grandparents. The judge, thus, separated Jane from her foster home, where her older brother, Arthur, continues to reside, to live with her maternal grandparents and her younger brother, Nicholas.

The judge's findings regarding the suitability of the maternal grandparents are supported by the evidence and entitled to our deference. *Cesare v. Cesare*, 154 *N.J.* 394, 413, 713 *A.2d* 390

(1998). The issue raised by the Law Guardian in this appeal, however, poses a legal question: whether the judge correctly excluded, as irrelevant, evidence of what a bonding evaluation concerning the relationship between Jane and the foster family might show. That was a legal question; the judge's determination on that point is not entitled to deference. *W.J.A. v. D.A.*, 210 *N.J.* 229, 238, 43 *A.*3d 1148 (2012); *N.J. Div. of Youth & Family Servs. v. A.R.*, 419 *N.J.Super.* 538, 543, 17 *A.*3d 850 (App.Div.2011). Although the issue posed constitutes a legal question, we reject what the parties appear to argue—that the disposition of this appeal is governed by a hard-and-fast rule. As with many questions concerning the welfare of children, the matter is highly dependent on the particular circumstances.

The grandparents are certainly correct that there is a statutory preference for the temporary placement of children with suitable relatives pending the ultimate determination of the children's future. For example, the Legislature has charged the Division with "initiat[ing] a search for relatives who may be willing and able to provide the care and support required." *N.J.S.A.* 30:4C–12.1(a). Indeed, it is the Division's goal "to place children with relatives whenever possible." *N.J. Div. of Youth & Family Servs. v. K.F.*, 353 *N.J.Super.* 623, 636, 803 *A.*2d 721 (App.Div. 2002); *see also N.J. Div. of Youth & Family Servs. v. K.L.W.*, 419 *N.J.Super.* 568, 579, 18 *A.*3d 193 (App.Div.2011); *In re E.M.B.*, 348 *N.J.Super.* 31, 34, 791 *A.*2d 256 (App.Div.2002). And it is also well-established that foster care is only designed as a "temporary palliative to care for children whose parents are unable to do so for one or more reasons." *In re Adoption of Two Children by A.M. and L.M.*, 170 *N.J.Super.* 320, 328, 406 *A.*2d 468 (App.Div. 1979). Relying on these general principles, the maternal grandparents argue that the trial judge properly found no significance in the possibility that a transfer of custody might cause a break in a bond between Jane and her foster family, which presently includes her older brother, Arthur.

On the other hand, the Law Guardian's argument relies on the child's best interests, which is always the polestar in such matters. *N.J. Div. of Youth & Family Servs. v. D.H.*, 398 *N.J.Super.* 333, 338, 942 *A.2d* 41 (App.Div.2008); *N.J. Div. of Youth & Family Servs. v. M.F.*, 357 *N.J.Super.* 515, 528, 815 *A.2d* 1029 (App.Div. 2003). The Law Guardian contends that the trial judge could not make a determination—even with regard to, as here, only a temporary change in custody [4]—without hearing evidence considering the existence or strength of a bond between child and foster family and the impact on the child caused by severing that bond.

We do not view the matter as consisting of a choice between the two stark choices posed by the parties. The undisputed facts reveal that Jane has been in the custody of her foster family, together with her older brother, since shortly after her birth, slightly more than one year ago. This was not such a brief or inconsequential period of time as to guarantee that her departure from that home will not cause harm. Although we reject the argument that every temporary removal of a child from foster home to a relative's home will require a bonding evaluation, the circumstances presented in this case militated against the judge's blanket refusal to allow the Law Guardian the opportunity to present bonding evidence before making a change. We, thus, reverse the order under review and remand for an evidentiary hearing for the development and consideration of bonding evidence.

In our March 14, 2013 order, we permitted the Division or Law Guardian, or both, to "proceed to obtain bonding evaluations" despite the pendency of this appeal so that the matter might advance without further delay were we to compel the trial court's consideration of that type of evidence. As a result, we assume the matter is ready, or at least near ready, for a hearing with regard to the bonding question. So there is no mistake about the

---

[4] The goal regarding Jane and Nicholas remains reunification with their parents.

importance of proceeding expeditiously, we assume that the matter will be scheduled immediately and the hearing completed within ninety days of today's date. If the Division or Law Guardian, or both, prove unable to present their evidence within that time frame, the judge is not foreclosed from changing custody to the maternal grandparents as previously ordered, assuming it remains appropriate to do so. To be clear, there is to be no delay beyond the time limit we have set forth. Our intent in intervening in these proceedings is to allow for the submission of bonding evidence that may illuminate what is in the child's best interests; it is not to allow an indefinite delay, which might have the undesired effect of strengthening any bond that may exist between the child and the foster family.

Reversed and remanded for proceedings in conformity with this opinion. We do not retain jurisdiction.