# **RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4805-15T4

B.C.,

    Plaintiff-Appellant,

v.

NEW JERSEY DIVISION OF CHILD
PROTECTION and PERMANENCY,

    Defendant-Respondent.

_____

**APPROVED FOR PUBLICATION**

**May 11, 2017**

**APPELLATE DIVISION**

Argued telephonically March 17, 2017 —
Decided May 11, 2017

Before Judges Reisner, Koblitz and Rothstadt.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Hunterdon
County, Docket No. FD-10-101-17.

Kenneth Rosellini argued the cause for
appellant.

Andrea C. D'Aleo, Deputy Attorney General,
argued the cause for respondent (Christopher
S. Porrino, Attorney General, attorney; Ms.
D'Aleo, on the brief).

    The opinion of the court was delivered by

KOBLITZ, J.A.D.

B.C. seeks reversal of the Family Part judge's July 1, 2016 order dismissing his complaint for grandparent visitation filed under the FD, non-dissolution, docket. At oral argument before us it became apparent that both sides now agree that the FD complaint should not have been dismissed. Although the parties have reached agreement on this point, we write this opinion to suggest the proper procedure for determining what contact B.C. should have with his grandchildren and to clear up any misunderstanding in the future regarding treatment of contemporaneous FN abuse and neglect and FD non-dissolution visitation complaints.

B.C. and his wife[1] have provided a resource home for their grandchildren during several lengthy placements by the Division of Child Protection and Permanency (Division). Most recently, the four children were in B.C.'s custody from January until June 2016, when the children were removed by the Division because both B.C. and his wife failed to cooperate with court-ordered psychological evaluations.

After the removal, B.C., represented by counsel, sought visitation with his grandchildren by filing an FD complaint and order to show cause seeking emergent relief. The Division

---

[1] B.C.'s wife, the maternal grandmother, is not a party to this action.

A-4805-15T4

responded to the FD complaint by stating it was invalid because of an ongoing FN action. The Division suggested a motion to intervene in the FN matter would be the proper procedure, although the Division made clear it would oppose such a motion. The judge hearing the FN complaint denied the emergent FD application and dismissed the FD complaint, noting the children were subject to an open FN matter and directing B.C. to "file a motion."

B.C. interpreted this order as requiring him to file a motion to intervene in the FN action. He appealed, claiming the FD complaint was the proper means of filing a grandparent visitation complaint, pursuant to N.J.S.A. 9:2-7.1. The Division responded that the trial judge appropriately denied B.C.'s request for emergent relief under the FD docket because the visitation sought was not emergent in nature. The Division, however, conceded at oral argument that dismissing the FD complaint was improper.

We conclude that the procedure followed here failed to acknowledge the grandparents' separate legal rights under the grandparent visitation statute, N.J.S.A. 9:2-7.1, which they would ordinarily seek to assert in the FD docket. But, as illustrated by this case, we also acknowledge that the visitation issue is relevant to both the FN and FD dockets. We reverse and remand to allow the judge to consider the visitation request of B.C., either within the FN docket, or as a companion FD case.

A-4805-15T4

Even if the issue is addressed in the FN docket, however, the FD docket number should be preserved to allow the grandparents to file an enforcement motion, if necessary, without involving the Division after the FN matter is resolved and dismissed. In general, the FD docket number should be maintained to preserve the FD plaintiff's right to pursue visitation.

B.C. and his wife are the maternal grandparents of four children; "Albert," the oldest, was thirteen years old when the FD complaint was filed.[2] The Division has been involved with the family since 2008 due to concerns about physical abuse, domestic violence and substance abuse by the birth parents.

The children were initially removed from their parents' custody in December 2012 and placed in the licensed resource home of their maternal grandparents. After seven months, the children were reunified with their mother, K.C., for five months before being returned to the grandparents for another eight months, after which they were again reunified with their mother. A month later, in January 2016, the children were once again removed and placed with their maternal grandparents. B.C. states that his grandchildren, particularly Albert, have been in his care so often

---

[2] Initials and pseudonyms have been used to protect the parties' identity. R. 1:38-3(d)(12).

that he has become a psychological parent to them.[3]  The three youngest children have been returned to their mother while Albert is living in an institutional setting.[4]

On February 22, 2016, the judge entered an FN order directing B.C. and his wife to "undergo psychological evaluation[s] as arranged by the Division."  An April 2016 letter from a Deputy Attorney General to B.C.'s counsel stated the Division sought psychological evaluations because there is a "strong possibility" that B.C. and his wife's home may be the permanent plan for the children.  The letter also stated that the Court Appointed Special Advocate[5] reported a number of behaviors involving the grandparents

---

[3]  See V.C. v. M.J.B., 163 N.J. 200, 223 (citations omitted) (stating the proof necessary to establish that one is a psychological parent: "(1) that the biological or adoption parent consented to, and fostered, the petitioner's formation and establishment of a parent-like relationship with the child; (2) that the petitioner and the child lived together in the same household; (3) that the petitioner assumed obligations of parenthood by taking significant responsibility for the child's care, education and development, including contributing to the child's support, without expectation of financial compensation . . . ; and (4) that the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship parental in nature"), cert. denied, 531 U.S. 926, 121 S. Ct. 302, 148 L. Ed. 2d 243 (2000).

[4] For the purposes of this appeal, we allow the expansion of the record by the Division to include various redacted documents from the FN matter, although the better practice is to file a motion to expand the record.  R. 2:5-5.

[5] In J.B. v. W.B., 215 N.J. 305, 332 n.5 (2013), the Court stated:

that were a "cause for concern." The letter included examples of psychological and development issues with three of the children. Albert had been diagnosed with symptoms of obsessive-compulsive disorder, and there was a suggestion that the grandparents might be enabling or exacerbating his behavior.

A May 2, 2016 FN order required that B.C. and his wife "shall follow through with the services for the children and attend the psychological evaluations schedule by the Division." A hearing was also scheduled for the end of the month to address the issue of psychological evaluations for B.C. and his wife.

The parties dispute what happened after this court date. B.C. states that the Division requested mediation and that he agreed and provided proposed dates. The Division does not address the issue of mediation, but instead contends that the grandparents continued to object to psychological evaluations. The Division also notes that during a June 2016 FN hearing, K.C., the mother,

N.J.S.A. 2A:4A-92 . . . authorizes a Court Appointed Special Advocate (CASA) program in each vicinage. See also Rule 5:8C (authorizing appointment of special advocate from CASA program to assist Family Part judge in determining best interests of child); Administrative Directive #05-13 (July 16, 2013) (noting that CASA volunteers gather information about children who have been removed from their homes due to abuse or neglect and present that information to court).

A-4805-15T4

did not object to removal of the children from her parents' home, or the court's order that no one would inform the grandparents of the removal plan.

On June 14, 2016, the children were removed by Division caseworkers and police while attending a dental appointment for two of the children. B.C. alleged that the children, particularly Albert, "were visibly upset and traumatized by the forcible 'Big Brother' type removal." The Division failed to make any arrangement for the children to communicate or visit with the grandparents after the removal. On July 1, 2016, B.C. filed his FD complaint and order to show cause.

In his FD complaint, B.C. stated that he was the "grandparent, caretaker and psychological parent for [his daughter's] children for several years, and particularly as to [Albert]". He stated that he had "been acting as the caretaker for the children for over a year in connection with [the FN matter] . . . in which [the Division] removed the children from their parents['] custody, but in which no permanency plan has been implemented." He stated that "[f]or reasons unknown" the Division removed the children "without making any arrangements for grandparent visitation," and that prior to this removal, he "ha[d] been in constant communication with the children their entire lives, and they have never gone this long without any visitation or communication."

7

In a letter to the judge, the Deputy Attorney General argued that the judge should reject the complaint because it was "[p]rocedurally . . . deficient on a number of levels." She stated "the [m]aternal [g]randparents have failed to file a [m]otion to [i]ntervene which would then give them standing to file a [m]otion seeking any relief." She argued that B.C. and his wife claimed to be the psychological parents of the children, but that this status "requires a legal finding . . . . [that] ha[d] not been made." Finally, she contended that the grandparents continued to refuse to have psychological evaluations.

The judge denied B.C.'s order to show cause on July 1, writing: "The complaint in this matter is dismissed. The minors in this case are the subject of an open FN matter." She also handwrote under her signature, "Non-Emergent" and "File a motion." After our oral argument, the Division notified us and B.C. that the judge had signed an August 30, 2016 FN order without B.C.'s participation, directing that the children have no contact with the maternal grandparents.

"We accord deference to the Family Court's fact-finding in part because of the court's 'special jurisdiction and expertise in family matters.' However, that deference is perhaps tempered when the trial court did not hear testimony, or make credibility determinations based on the demeanor of witnesses." N.J. Div. of

Child Prot. & Permanency v. J.D., 447 N.J. Super. 337, 350 (App. Div. 2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)).

When a "trial court dismisse[s] plaintiff['s] complaint as a matter of law, our review of the court's decision is de novo." R.K. v. D.L., 434 N.J. Super. 113, 142 (App. Div. 2014) (citing Smerling v. Harrah's Entm't, Inc., 389 N.J. Super. 181, 186 (App. Div. 2006)). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Zaman v. Felton, 219 N.J. 199, 216 (2014) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

B.C. argues that as a full-time caretaker for the grandchildren on numerous occasions for extended periods of time, he made "a prima facie case for visitation under the FD docket, and therefore, the [t]rial [c]ourt erred in dismissing the case without a hearing and without any discovery." B.C. argues that the trial court erred in instructing him to file a motion to intervene in an open FN docket case "when the FD docket complaint was the proper procedure for asserting grandparent visitation in the State of New Jersey." On appeal, for the first time, the Division conceded that the judge could have heard the FD matter with the FN matter or heard the two matters one after the other.

Two of the many Family Part docket types are the "FD [docket], which consists of child custody, visitation, child support, paternity, medical support, and spousal support in non-divorce matters; [and the] FN, which consists of abuse and neglect matters," as well as children in need of services. N.J. Div. of Youth & Family Servs. v. I.S., 214 N.J. 8, 22 n.3, cert. denied, ___ U.S. ___, 134 S. Ct. 529, 187 L. Ed. 2d 380 (2013). In addition to general visitation and support, the "FD docket," which is also known as the "non-dissolution docket" includes actions for "non-parent relatives seeking custody, child support and/or visitation regarding minor children." R.K., supra, 434 N.J. Super. at 130-31 (quoting Acting Admin. Dir. of the Courts Memorandum, "Revised Procedures," (September 2, 2011)).

While no specific directive states how a judge should proceed in the case of an FD complaint filed during the pendency of an ongoing FN case, the court staff's Non-Dissolution Operations Manual for New Jersey states that:

> [i]f the search for previous case activity reveals a current abuse & neglect litigation case involving the child for whom custody/parenting time is being sought, Family Division staff should take the complaint and refer the case to the Judge handling the FN matter. The FN judge will determine the next action to be taken regarding the custody complaint.

[New Jersey Judiciary Family Division: Non-Dissolution Operations Manual, § 1107 (December 2007 Revised Edition).]

Judges who handle FN and FD dockets may choose to handle the matters separately or at the same time. See N.J. Div. of Youth & Family Servs. v. W.F., 434 N.J. Super. 288, 297-99 (App. Div.), certif. denied, 218 N.J. 275 (2014) (finding that in a case where the trial judge consolidated FN and FD actions, the father's agreement to share joint legal custody of three younger children in an FD action resolved the FN matter); N.J. Div. of Child Prot. & Permanency v. C.S., 432 N.J. Super. 224, 226 (App. Div. 2013) (finding that although the grandparents sought custody of one grandchild under an FD docket, the court was required to perform a bonding evaluation considering the best interests of the child in light of an ongoing FN investigation); see also N.J. Div. of Youth & Family Servs. v. J.D., 417 N.J. Super. 1, 22 (App. Div. 2010); (noting in the context of the non-offending parent seeking to make a child's placement permanent during the course of a Title 9[6] FN litigation, "the same Family Part judge must preside over the third-party actions that are inextricably intertwined with the Division's case").

---

[6] Title 9 actions are brought by the Division "against the wishes of a parent when a child is abused or neglected." I.S., supra, 214 N.J. at 14; see N.J.S.A. 9:6-8.21.

Thus, the same judge, who is aware of all of the evidence surrounding the welfare of the children, should ordinarily preside over both proceedings, whether the FD complaint is heard at the same time as the FN matter or not. Hearing both matters simultaneously is not necessarily preferable. See I.S., supra, 214 N.J. at 41-42 (stating "it is preferable for the court to ensure that there occurs separate and distinct proceedings" for a Title 30[7] FN action and an FM[8] custody dispute, but recognizing this "procedure may not always prevail"). Because FD actions should be heard at the same time or in close proximity to FN actions, as both parties now agree, the decision to dismiss B.C.'s FD complaint was not correct.

On remand, the judge must decide the extent to which B.C. will have access to the FN proceedings. FN proceedings are confidential in nature. N.J.S.A. 9:6-8.10a. Although caregivers are notified of proceedings and allowed to make a statement in court, this does not confer the right to be present during the entire hearing. N.J.S.A. 9:6-8.19a; N.J.S.A. 30:4C-12.2; R. 5:12-

---

[7] "Title 30 enables the provision of services to children in need." Id. at 14 (citing N.J.S.A. 30:4C-11 and -12).

[8] The FM docket consists of complaints for dissolution matters including: divorce, dissolution of a domestic partnership, civil union dissolution, and palimony, as well as related relief in cases where a dissolution complaint has been filed. See id. at 22 n.3.

A-4805-15T4

4(i). The judge must therefore decide what level of access is appropriate to serve the best interests of the children while also affording B.C. his right to be fully heard on his grandparent visitation application.

As an alternative to filing the FD complaint, B.C. could have chosen to file a motion to intervene in the FN matter. Intervention, however, is not the preferable method of proceeding. Although B.C. retained counsel, many families involved with the Division are without means to hire a lawyer, and the FD docket is constructed to make it easy for a litigant to file a complaint without the assistance of counsel. See R.K., supra, 434 N.J. Super. at 131-32; In re Adoption of J.E.V., 226 N.J. 90, 93-94 (2016). Furthermore, motions to intervene in FN matters must be considered in light of statutory limitations. See N.J. Div. of Youth & Family Servs. v. D.P., 422 N.J. Super. 583, 590 (App. Div. 2011). Although not the preferred method of proceeding, we will briefly discuss the consequences of filing a motion to intervene.

Intervention as of right is granted when an unnamed party meets the following requirements:

> (1) "claims an interest relating to the property or transaction which is the subject of the action," (2) shows she "is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest," (3) demonstrates her "interest is [not] adequately represented

by existing parties," and (4) files a "timely" application to intervene.

[Id. at 590 (quoting R. 4:33-1).]

A permissive intervention may be granted in the discretion of the court to "anyone . . . if the claim or defense and the main action have a question of law or fact in common." R. 4:33-2. Permissive intervention "requires a trial court to liberally determine 'whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" D.P., supra, 422 N.J. Super. at 590-91 (quoting Am. Civil Liberties Union of N.J., Inc. v. Cnty. of Hudson, 352 N.J. Super. 44, 70 (App. Div.), certif. denied, 174 N.J. 190, 803 (2002)).

B.C. also seeks discovery. We stated in D.P. that although resource parents are entitled by statute to notice and the right to speak at hearings concerning the child, they have "no legal claim sanctioning their right to discovery or intervention in a best interests hearing." Id. at 599, 586-87 (citing N.J.S.A. 9:6-8.19a, N.J.S.A. 9:3-45.2, and N.J.S.A. 30:4C-12.2).

B.C. does not seek custody of Albert, who remains in an institutional setting. If, however, B.C. were found to be Albert's psychological parent, he would be in a different position than the resource parents in D.P. who sought to intervene in court proceedings involving the best interests of an unrelated child placed in their home. Should the court find that intervention was

14                                                      A-4805-15T4

appropriate, B.C. would become a party to the FN case and entitled to participate fully.

As a final matter, it is valuable to review the standards for determining grandparent visitation. Generally, N.J.S.A. 9:2-7.1 requires grandparents seeking visitation "to prove by a preponderance of the evidence that the granting of visitation is in the best interests of the child." Because this standard encroaches upon the fundamental right of parents to make decisions regarding the care, custody and nurturing of their children, the State may intrude only to avoid harm to the child. Moriarty v. Bradt, 177 N.J. 84, 114-15, (2003), cert. denied, 540 U.S. 1177, 124 S. Ct. 1408, 158 L. Ed. 2d 78 (2004). Thus, when the parent has denied the grandparent visitation, to obtain a hearing the grandparent must make a prima facie case under the augmented standard of Moriarty "that visitation is necessary to avoid harm to the child." Id. at 117; Major v. Maguire, 224 N.J. 1, 6 (2016).

A showing of harm is not required when the party denying visitation has custodial rights but not "a constitutionally based presumption of parental autonomy." Tortorice v. Vanartsdalen, 422 N.J. Super. 242, 252 (App. Div. 2011), certif. denied, 209 N.J. 233 (2012). In Tortorice, we affirmed an order granting visitation to a child's paternal grandparents over the objection of the maternal grandmother who had sole legal custody of the child and

had been designated the psychological parent.  Id. at 244, 251-52.  Because the Division is the current legal custodian of Albert but, like the grandmother in Tortorice, is not vested with the constitutionally-based presumption of parental autonomy, the lower burden of "best interests of the child" is appropriate with regard to B.C.'s request to visit Albert.

The other three children are now living with K.C., with the Division retaining care and supervision only.  Thus, absent the August 30, 2016 court order to the contrary, K.C. would be able to make grandparent visitation decisions with regard to those three children, although preferably in consultation with the Division.  The court should reconsider the August 30 order because it is not clear from the record that the judge considered K.C.'s constitutional right to determine grandparent visitation, as the parent and legal custodian of the three younger children.[9]  We remand for that reconsideration as well as consideration of B.C.'s FD complaint, either heard with the FN matter or heard separately by the same judge.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[9] In a letter to us dated October 24, 2016, K.C.'s counsel expressed K.C.'s willingness to allow for "some grandparent visitation and phone contact in the future; with the time and date to be determined solely by her."

A-4805-15T4