# RECORD IMPOUNDED

### NOT FOR PUBLICATION WITHOUT THE
### APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3365-18T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

M.C.,

     Defendant,

and

C.H.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF M.H.,

     a Minor.

_____

Submitted October 15, 2019 – Decided November 22, 2019

Before Judges Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FG-02-0038-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Louis W. Skinner, Designated counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Sara M. Gregory, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Melissa R. Vance, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

C.H. (the father) appeals from a March 22, 2019 order terminating his parental rights to M.H. (the child) and awarding guardianship in favor of the Division of Child Protection and Permanency (the Division). Judge Michael Antoniewicz conducted a three-day trial, entered judgment, and rendered a thorough forty-eight page written decision. On appeal, the father contends that the judge erred in concluding that termination of his parental rights was in the best interests of the child, raising the following arguments:

POINT I
THE COURT BELOW ERRED IN CONCLUDING [THE CHILD] WAS HARMED BY [THE FATHER].

2

POINT II

THE COURT BELOW ERRED IN CONCLUDING [THE FATHER] IS UNWILLING OR UNABLE TO ELIMINATE THE ALLEGED HARM FACING [THE CHILD] OR TO PROVIDE A SAFE AND STABLE HOME.

POINT III

THE COURT BELOW ERRED IN CONCLUDING [THE DIVISION] EXERCISED REASONABLE EFFORTS TO PROVIDE SERVICES TO HELP [THE FATHER] TO CORRECT THE CIRCUMSTANCES THAT LED TO PLACEMENT OUTSIDE THE HOME.

A. [The Division] Failed To Provide Reasonable Efforts Related To Providing Services To [The Father].

B. [The Division] Failed To Adequately Explore Kinship Legal Guardianship As A Viable Alternative To Termination.

POINT IV

THE COURT'S CONCLUSION THAT TERMINATION OF PARENTAL RIGHTS WILL NOT DO MORE HARM THAN GOOD IS ERRONEOUS.

I.

We begin our discussion with the well-settled legal framework regarding termination of parental rights. Parents have a constitutionally protected right to the care, custody, and control of their children. Santosky v. Kramer, 455 U.S. 745, 753 (1982); see In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999).

3

However, that right is not absolute. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014) (citation omitted); N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 599 (1986). At times, a parent's interest must yield to the State's obligation to protect children from harm. N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 397 (2009); In re Guardianship of J.C., 129 N.J. 1, 10 (1992). To address these concerns, the Legislature created a test to determine when termination of parental rights is in a child's best interests. The Division must prove, by clear and convincing evidence, the following four prongs:

> (1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;
>
> (2) [t]he parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) [t]he [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

A-3365-18T3

(4) [t]ermination of parental rights will not do more harm than good.

[N.J.S.A. 30:4C-15.1(a).]

See also A.W., 103 N.J. at 604-11. The four prongs "are not discrete and separate." K.H.O., 161 N.J. at 348. Rather, "they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." Ibid. "The considerations involved in determinations of parental fitness are 'extremely fact sensitive' and require particularized evidence that address the specific circumstances in the given case." Ibid. (quoting In re Adoption of Children by L.A.S., 134 N.J. 127, 139 (1993)).

Our review of a family judge's factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 413 (1998). "When a biological parent resists termination of his or her parental rights, the [judge's] function is to decide whether that parent has the capacity to eliminate any harm the child may already have suffered, and whether that parent can raise the child without inflicting any further harm." N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 87 (App. Div. 2006). The factual findings that support such a judgment "should not be disturbed unless 'they are so wholly insupportable as to result in a denial of justice,' and should be upheld whenever they are 'supported by adequate, substantial and credible evidence.'" In re Guardianship of J.T., 269 N.J. Super.

172, 188 (App. Div. 1993) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)).  "[T]he conclusions that logically flow from those findings of fact are, likewise, entitled to deferential consideration upon appellate review."  R.L., 388 N.J. Super. at 89.

## II.

We now turn to the father's argument that the judge erred in finding that the Division proved each of the four prongs of the best interests test by clear and convincing evidence.  We disagree with the father's contentions, and as to the four prongs, we affirm substantially for the reasons given by the judge.  We add the following.

## A.

The first prong of the best interests test requires the Division to prove that "[t]he child's safety, health or development has been or will continue to be endangered by the parental relationship."  N.J.S.A. 30:4C-15.1(a)(1).  "Although a particularly egregious single harm can trigger the standard, the focus is on the effect of harms arising from the parent-child relationship over time on the child's health and development."  K.H.O., 161 N.J. at 348.  "[T]he attention and concern of a caring family is 'the most precious of all resources.'"  In re Guardianship of DMH, 161 N.J. 365, 379 (1999) (quoting A.W., 103 N.J. at 613).  "[W]ithdrawal

6

of that solicitude, nurture, and care for an extended period of time is in itself a harm that endangers the health and development of the child." Ibid.

We emphasize that the Division can meet its burden by showing conduct "detrimental to the physical or mental health of the child . . . in the form of actual or imminent harm." A.W., 103 N.J. at 616 (emphasis added). "[T]he cornerstone of the inquiry is not whether the biological parents are fit but whether they can cease causing their child harm." J.C., 129 N.J. at 10. "Courts need not wait to act until a child is actually irreparably impaired by parental inattention or neglect." DMH, 161 N.J. at 383. "[A]ny question of the parental role is oriented only to the prediction of the future condition of the child." A.W., 103 N.J. at 615-16. Thus, "[p]arental behavior is relevant only insofar as it indicates a further likelihood of harm to the child in the future." Id. at 616. The standard is not whether the parents have caused harm, but "whether it is reasonably foreseeable that the parents can cease to inflict harm." N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 167 (2010) (quoting A.W., 103 N.J. at 607).

The judge found that the father was unable to provide for the child's health, safety, and development based on the father's incarceration and anti-social personality disorder diagnosis. The judge considered the father's "long

A-3365-18T3

periods of involvement with criminal activity and incarceration," which resulted in "extremely limited" contact with the child. After the father learned of his child's birth, he was not incarcerated, and he was aware that the child's mother might surrender her parental rights. However, a few months later, he was reincarcerated for a parole violation. Thus, he would continue to be "unavailable to provide [the child] with any nurturance, care and solicitude." Contrary to the father's contention, the judge did not err in considering his incarceration because the judge considered the impact that his incarceration had and would continue to have on his ability to parent the child. See R.G., 217 N.J. at 555-56. Although the father made efforts to visit with the child while he was incarcerated, the judge reasonably concluded that he was unable to adequately nurture and care for her.

The judge also relied on the expert testimony of Dr. Frank Dyer, a psychologist that the Division retained. After conducting several tests, Dr. Dyer diagnosed the father with anti-social personality disorder. He described the father as "emotionally volatile with problems with impulse control and with a lower than [average] threshold for physical aggression." Dr. Dyer opined that the prognosis for the father to develop adequate parenting skills was poor and that he would "continue to place the child at risk of harm if placed in his care."

The potential for harm was even greater in light of the child's special medical needs resulting from her severe allergies. Based on this testimony, the judge reasonably concluded that the father lacked an adequate parenting capacity. Thus, the judge's conclusion that the Division satisfied prong one is supported by substantial, credible evidence in the record.

B.

The second prong of the best interests test requires the Division to prove that "[t]he parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm." N.J.S.A. 30:4C-15.1(a)(2). The judge should inquire as to "whether the parent has cured and overcome the initial harm that endangered the . . . child, and is able to continue a parental relationship without recurrent harm to the child." K.H.O., 161 N.J. at 348 (citations omitted). The Division must show continued harm to the child, resulting from the parent's inability or unwillingness to remove or overcome the harm. N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 483 (App. Div. 2012). The first and second prongs relate to one another, and "evidence that supports one informs and may support the other as part of the

comprehensive basis for determining the best interests of the child." DMH, 161 N.J. at 379.

The judge should also consider whether "the parent has failed to provide a 'safe and stable home for the child' and a 'delay [of] permanent placement' will further harm the child." K.H.O., 161 N.J. at 352 (quoting N.J.S.A. 30:4C-15.1(a)(2)). Proof of the harm caused by a delay in permanency "may include evidence that separating the child from [the] resource family parent[] would cause serious and enduring emotional or psychological harm to the child." N.J.S.A. 30:4C-15.1(a)(2). Further, "[k]eeping the child in limbo, hoping for some long term unification plan, would be a misapplication of the law." N.J. Div. of Youth & Family Servs. v. A.G., 344 N.J. Super. 418, 438 (App. Div. 2001).

The judge found that the father did not overcome the initial harm to the child and that the father would be unable to parent the child without causing recurrent harm. Due to the father's incarceration, it was unclear when he would be available to parent the child, and even with the possibility of parole, he was at risk for reincarceration. Further, there was no evidence of his ability to parent or to provide a home upon his release from prison. The judge also noted the

father's "grandiose and unrealistic plans" for life with the child upon release from prison.

The judge also relied on the father's anti-social personality diagnosis and further testimony from Dr. Dyer as to the father's denial of his parenting deficits, his unwillingness to "abandon his antisocial lifestyle," and his lack of motivation "to meaningfully participate in treatment." The father's challenge to the significance and reliability of his diagnosis only serves to demonstrate his unwillingness to cure the harm to the child, especially since he offered no expert testimony to the contrary at trial. Likewise, his claim that the Division failed to provide effective services further demonstrates his inability to acknowledge his parenting deficiencies. As discussed further under prong three, the Division provided services, and the father participated in programs in the prison. However, Dr. Dyer opined that the father would require additional treatment and a longer period of time to correct his deficiencies.

While the father might turn his life around someday, the judge concluded that his goals to cure the harm to the child could not be met "within the permanency timeline that fit[] [the child's] needs." Dr. Dyer opined that the child's need for permanency was great, especially during critical stages of development. Because the child developed a profound attachment to the

resource parent, she would suffer extreme distress if removed from the resource parent. Waiting indefinitely for the father to acquire the necessary parenting skills would only magnify this harm. Thus, the judge's conclusion that the Division satisfied prong two is supported by substantial, credible evidence in the record.

C.

The third prong of the best interests test requires "the [D]ivision [to make] reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court [to] consider[] alternatives to termination of parental rights." N.J.S.A. 30:4C-15.1(a)(3).

The Division must show that it made reasonable efforts to reunify the family by helping the parent correct the conditions that led to the child's removal. K.H.O., 161 N.J. at 354. These efforts may include the following:

> (1) [C]onsultation and cooperation with the parent in developing a plan for appropriate services;
>
> (2) providing services that have been agreed upon, to the family, in order to further the goal of family reunification;
>
> (3) informing the parent at appropriate intervals of the child's progress, development and health; and

(4) facilitating appropriate visitation.

[N.J.S.A. 30:4C-15.1(c).]

The reasonableness of the Division's efforts "must be [determined] on an individualized basis." DMH, 161 N.J. at 390. "Services that may address one family's needs will not be helpful to another." Ibid. Further, the Division's efforts are not evaluated based on their success. Id. at 393. "We recognize the difficulty and likely futility of providing services to a [parent] in custody . . . ." N.J. Div. of Youth and Family Servs. v. S.A., 382 N.J. Super. 525, 535-36 (App. Div. 2006).

As to the court's duty under prong three, "[i]n reviewing a child's placement, [the judge] must determine whether 'such placement ensures the safety and health and serves the best interest of the child.'" N.J. Div. of Youth & Family Servs. v. M.F., 357 N.J. Super. 515, 528 (App. Div. 2003) (quoting N.J.S.A. 30:4C-51). The child's best interests "is always the polestar in such matters." N.J. Div. of Child Prot. & Permanency v. C.S., 432 N.J. Super. 224, 229 (App. Div. 2013). Although the Division must evaluate relatives as potential caretakers, there is no presumption favoring the child's placement with such relatives. N.J.S.A. 30:4C-12.1; N.J. Div. of Youth & Family Servs. v. J.S., 433 N.J. Super. 69, 82 (App. Div. 2013).

The judge concluded that the Division made reasonable efforts to reunify the father and the child and to provide services to the father by including him in case planning for the child, transporting him to all court hearings regarding the child, regularly updating him on the child's health, and providing visitation at the prison twice a month. The Division could not provide other services to an incarcerated parent, but it encouraged the father to take advantage of programs the prison offered, which included classes teaching culinary skills, parenting skills, and anger management skills. Dr. Dyer opined that the father was capable of benefitting from the services provided, but the father had "been deceptive and evasive which . . . contributed to his lack of progress from [the] services." The judge noted the father's lack of expert evidence identifying services that the Division should have provided to help him acquire the necessary parenting skills. The Division did everything it could for the father, short of waiting for him to be released from prison and then providing additional services. Relying on Dr. Dyer's testimony, the judge concluded that waiting to provide additional services would be harmful to the child and "likely a fruitless endeavor" due to the father's poor prognosis for change.

The judge also concluded that there were no alternatives to terminating the father's parental rights because the Division evaluated all possible relatives

14

for placement of the child and ruled out each one upon considering the best interests of the child. The Division explored the child's maternal grandparents, paternal grandmother, paternal aunt, paternal cousin, and father's fiancé. Each individual was ruled out after the Division concluded that placement with any one of them was not in the child's best interests. The father's claims to the contrary are unsupported, and we have no reason to question the judge's finding based on the record before us. The Division was unable to locate any other relatives, and the father did not identify any other relatives for the Division to consider. Thus, we reject the father's argument that the judge erred in declining to place the child with a relative.

The judge found that the only person suitable to care for the child was the resource parent, who expressed a desire to adopt the child and to whom the child had bonded. Consequently, the judge concluded that adoption by the resource parent was "feasible, likely and necessary to promote the wellbeing and safety of [the child] in this case." Thus, the judge's conclusion that the Division satisfied prong three is supported by substantial, credible evidence in the record.

D.

The fourth prong of the best interests test requires a determination that the termination of parental rights "will not do more harm than good." N.J.S.A.

30:4C-15.1(a)(4). The judge must ask whether "after considering and balancing the two relationships, the child will suffer a greater harm from the termination of ties with [the] natural parents than from the permanent disruption of [the] relationship with [the] foster parents." K.H.O., 161 N.J. at 355. This prong "cannot require a showing that no harm will befall the child as a result of the severing of biological ties." Ibid. Evidence that the child's bond with the resource parent is comparatively stronger than his or her bond with the biological parent and that, consequently, the child would suffer a great loss if separated from the resource parent, is sufficient to satisfy this prong. See N.J. Div. of Youth and Family Servs. v. E.P., 196 N.J. 88, 108 (2008) (citations omitted).

"The overriding consideration . . . remains the child's need for permanency and stability." L.J.D., 428 N.J. Super. at 491-92. "Ultimately, a child has a right to live in a stable, nurturing environment and to have the psychological security that his most deeply formed attachments will not be shattered." N.J. Div. of Youth and Family Servs. v. F.M., 211 N.J. 420, 453 (2012). "A child cannot be held prisoner of the rights of others, even those of his or her parents. Children have their own rights, including the right to a permanent, safe and stable

placement." N.J. Div. of Youth and Family Servs. v. C.S., 367 N.J. Super. 76, 111 (App. Div. 2004).

The judge concluded that terminating the father's parental rights would not do more harm than good to the child. The judge relied on Dr. Dyer's testimony as to his bonding assessments of the child with the father and with the resource parent. Dr. Dyer testified that the child viewed the resource parent as her psychological parent. If removed from the resource parent, the child would suffer a traumatic loss and experience extreme distress, and the father lacked the ability to mitigate the harmful effects of such a loss. The child's attachment to the father was considerably weaker. Although the child had a positive emotional tie to the father, she did not have a profound attachment. Dr. Dyer compared their relationship to that of a teacher and a student. Consequently, the child would not experience lasting psychological harm that could not be ameliorated by the resource parent if the father's parental rights were terminated. Dr. Dyer opined that adoption by the resource parent was in the best interests of the child. Based on this testimony, the judge found that terminating the father's parental rights would not do more harm than good because it would provide the child with the permanency she needed and would prevent her from suffering significant psychological harm.

A-3365-18T3

We reject the father's contention that <u>In re Guardianship of K.L.F.</u>, 129 N.J. 32 (1992) requires us to ignore Dr. Dyer's testimony as to the child's attachment to the resource parent. In <u>K.L.F.</u>, the judge found an expert's testimony to be credible, where the expert opined that removing a child from her resource parent would cause minimal harm. <u>Id.</u> at 41-42. However, <u>K.L.F.</u> is distinguishable because the expert's opinion was supported by the Division's records. <u>Id.</u> at 42. Here, the father has provided no evidence showing that removing the child from the resource parent would cause her only minimal harm. Thus, we find no reason to question the judge's reliance on Dr. Dyer's testimony. The judge's conclusion that the Division satisfied prong four is supported by substantial, credible evidence in the record.

To the extent that we have not addressed the parties' remaining arguments, we conclude that they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3365-18T3