# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1907-22

K.C.,

    Plaintiff-Appellant,

v.

D.C. and D.J.,

    Defendants-Respondents.

_____

Argued March 19, 2024 – Decided May 21, 2024

Before Judges Mayer and Whipple.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FD-20-0996-17.

James P. Yudes argued the cause for appellant.

Respondents have not filed a brief.

PER CURIAM

Plaintiff K.C., a grandfather, appeals from a February 23, 2023 order denying his order to show cause (OTSC) seeking custody of his granddaughter, H.C.[1] We vacate and remand for a hearing.

We glean the following facts from the record. In April 2016, D.C. gave birth to a girl, H.C. In January 2017, D.C. was incarcerated, and J.D., H.C.'s father, did not have custody at the time. K.C. was awarded sole residential custody of H.C., and her two brothers, with D.C.'s consent. Between January 2017 to April 2018, K.C. enrolled H.C. in daycare, and provided for her medical care, food, shelter, clothing, enrichment and social activities.

In April 2018, upon D.C.'s release from prison, she was awarded parenting time every other weekend. Around this time, the Division of Child Protection and Permanency (Division) no longer monitored the family and by June 2018, physical and legal custody was returned to D.C. because she complied with the court's requirements to obtain custody. The court also ordered D.C. to provide K.C. with access to, and parenting time with, H.C. D.C. was prohibited from leaving New Jersey without judicial approval.

On October 31, 2018, K.C. filed an application to regain custody of H.C. and her two brothers, but his request was denied. Nevertheless, according to

---

[1] We use initials to protect the confidentiality of the child. R. 1:38-3(d)(13).

K.C., D.C. continued to leave H.C. and her brothers in K.C.'s care. In January 2019, K.C. enrolled H.C. in elementary school, where she attended classes until June 2020. K.C. continued to care for H.C. and took the child on vacations. K.C. alleges D.C. failed to provide care because the children appeared undernourished and were often late for school.

D.C. moved to Maryland in 2020 without court approval, initially leaving H.C. with K.C. She later removed H.C. from K.C.'s care and took her to Maryland. K.C. visited with H.C. in Maryland on a regular basis. Allegedly, H.C. told K.C. that she was subjected to physical abuse by D.C.

Concerned about her wellbeing, on November 12, 2020, K.C. moved for custody of H.C. J.D. also filed an application with the court because he too was worried about H.C.'s wellbeing. Additionally, J.D. alleged D.C. prevented him from seeing H.C. and threatened him if he sought parenting time. According to K.C., around this time J.D. executed a consent agreement where he agreed to sharing joint legal and physical custody of H.C. with K.C.

In February 2021, J.D. consented to H.C. living with D.C. in Maryland and, subsequently, D.C. received judicial permission to move out of state. As a result, K.C. withdrew his New Jersey application and filed an application

A-1907-22

seeking custody of H.C. in Washington County, Maryland, because K.C. believed Maryland had jurisdiction over the custody matters.

In March 2021, J.D. sent correspondence to H.C.'s school, which he later forwarded to K.C., expressing concern for H.C.'s wellbeing. Meanwhile, Maryland's Child Protective Services (CPS) visited D.C.'s home on three separate occasions. The findings of the CPS investigation are not in the record before us and are unknown.

In July 2021, the Maryland court denied D.C.'s motion to dismiss K.C.'s application seeking custody of H.C. In November 2021, the Maryland court granted D.C.'s motion to dismiss K.C.'s application for lack of jurisdiction. Throughout this time, despite the Maryland court's order, K.C. continued to visit H.C. with D.C.'s consent.

K.C. filed for custody of H.C. in New Jersey. On April 12, 2022, the court determined New Jersey "shall continue to exercise exclusive jurisdiction" over H.C. and ordered D.C. to coordinate "parenting time" between K.C. and H.C. However, D.C. delayed parenting time. In December 2022, the court entered an order establishing a parenting time schedule for K.C.

On January 28, 2023, K.C.'s fiancée alleged she observed bruises on H.C.'s back and H.C. informed her that H.C.'s brothers and D.C. physically

A-1907-22

abused her frequently. K.C. filed an OTSC on February 10, 2023, asserting H.C. was being abused and sought an emergent change in H.C.'s residential and physical custody so that she would reside with K.C. pending the court's review of the matter. Although the court refused to consider the matter on an emergent basis, it held oral argument on February 23, 2023.

K.C. argued he was H.C.'s psychological parent. The trial court ruled K.C. lacked standing to object to D.C.'s parenting decisions and, also, that K.C. needed to call CPS if he had concerns that H.C. was being abused. The court did not hold a psychological parenthood hearing or take testimony before summarily concluding, "I think being parented by her parents is in her best interest" and "[it] makes no sense to me why I should listen to a certification by someone who's obviously drilling the child when she comes there about what's happened when she's with [m]om and [d]ad." Further, the court declined to "interfere with the parents' rights to parent their child," noting that they "are autonomous parents." In addition to failing to hold a psychological parenthood hearing, the court made no new determination whether New Jersey had jurisdiction over the custody dispute.

On February 24, 2023, the court denied K.C.'s OTSC seeking shared custody of H.C. The court's order further stated it "will request [CPS] [to]

submit an update/report as to their findings" for an in-camera review. The court also explained it would determine whether K.C. could obtain a copy of the CPS report after the court's review.

This appeal followed.

On March 21, 2023, the court filed an amplification of its decision and order pursuant to Rule 2:5-1(d). In that amplification, the court cited a portion of the applicable standard to determine whether a third party is a psychological parent and stated that "[t]he facts here do not support a finding that [K.C.] is [H.C.'s] psychological parent." Further, even though the court did not hold a hearing, it stated, "K.C. is undoubtedly not the psychological parent of [H.C.]" Additionally, the court explained CPS was the proper entity to investigate issues of abuse and neglect. Citing no evidence, testimony, or documentation, the court further stated that CPS "investigated" and "determined not to remove [H.C.] from her parents' care."

Our review of a trial court's factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "[F]indings by the trial court [in a custody dispute] are binding on appeal when supported by adequate, substantial, credible evidence." W.M. v. D.G., 467 N.J. Super. 216, 229 (App. Div. 2021) (citing Cesare, 154 N.J. at 411-12). A reviewing court should not disturb the

"factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (alteration in original) (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974)). When a court denies a request for a modification of child custody without a plenary hearing, the denial is reviewed for an abuse of discretion, with deference to the expertise of the Family Part judge. Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015).

We accord deference to the findings of fact made by the Family Part because of that court's expertise in family matters. Cesare, 154 N.J. at 413. Deference is appropriate in matters where the evidence is "largely testimonial and involves questions of credibility" because the trial court was in the best position to evaluate the veracity of the witnesses. P.B. v. T.H., 370 N.J. Super. 586, 601 (App. Div. 2004). A reviewing court will review issues of law de novo, including issues arising in a custody dispute. R.K. v. F.K., 437 N.J. Super. 58, 61 (App. Div. 2014).

Here, in April 2022, the New Jersey court held it had exclusive, continuing jurisdiction regarding K.C.'s custody application. Additionally, the

April 2022 order establishing New Jersey maintained jurisdiction post-dated a November 2021 order from the Maryland court determining Maryland lacked subject matter jurisdiction regarding H.C.'s custody.

The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) and its New Jersey equivalent (NJUCCJEA) are used by New Jersey courts to determine the state with authority to exercise jurisdiction of child custody matters. Griffith v. Tressel, 394 N.J. Super. 128, 138 (App. Div. 2007); N.J.S.A. 2A:34-53 to -95. The NJUCCJEA "should be interpreted so as to avoid jurisdictional competition and conflict." Ibid. The first inquiry a court must consider is whether it has jurisdiction on a motion for child custody or whether continuing jurisdiction over custody determinations exist. Id. at 139-40. Pursuant to N.J.S.A 2A:34-58, a child custody determination by a New Jersey court that had jurisdiction binds all parties. Additionally, a parenting time schedule, is considered a "custody determination" and modification of such determination is a custody proceeding under the NJUCCJEA. Griffith, 394 N.J. Super. at 137-38.

Here, K.C. was awarded "parenting time" under an April 2022 order, where the court also held it had exclusive and continuing jurisdiction of H.C. The court also set a schedule in response to K.C.'s application for parenting

time. However, the court, when confronted with a motion to modify a child custody order, must reevaluate whether the circumstances have changed so as to divest the state of jurisdiction. Id. at 140-41. This did not happen here.

Pursuant to N.J.S.A. 2A:34-66(a)(1)-(2), "exclusive, continuing jurisdiction" is retained unless the New Jersey court determines that neither the child or one of its parents has a "significant connection with this State and that substantial evidence is no longer available in this State concerning the child's care, protection, training and personal relations" or a court establishes that the child or parent do not presently reside in the state.

Here, the court did not reexamine whether New Jersey still retained jurisdiction. Only a New Jersey court can decide that it no longer has jurisdiction over child custody issues based on a lack of significant connection and substantial evidence. Griffith, 394 N.J. Super. at 141. In Griffith, a significant connection existed because the child returned to New Jersey for parenting time. Id. at 146-47. The determination of whether New Jersey retained jurisdiction is central to whether K.C. can establish psychological parenthood. In the present case, K.C. asked the court to determine whether it retained jurisdiction. During the OTSC hearing, the court did not address the jurisdiction question, nor retaining the jurisdiction. On remand, the court must

first determine whether jurisdiction remained, and a finding is required as to jurisdiction under the NJUCCJEA. Once the jurisdictional element is satisfied, the court may proceed to address the issue of custody.

Furthermore, when presented with issues regarding custody, the court's primary consideration is on the best interests of the child. Kinsella v. Kinsella, 150 N.J. 276, 317 (1997). A parent's custodial rights can be challenged by a third party who presents clear and convincing evidence of parental unfitness, abandonment, gross misconduct, or the existence of "exceptional circumstances" affecting the child's welfare. Watkins v. Nelson, 163 N.J. 235, 246 (2000); see also V.C. v. M.J.B., 163 N.J. 200, 219 (2000) (discussing psychological parenthood); N.J.S.A. 9:2-4 (stating that parents' right to custody is equal and discussing custody orders); N.J.S.A. 9:2-9 (allowing interested party to institute action pertaining to welfare of child); N.J.S.A. 9:2-10 (discussing orders or judgment as to custody).

When evaluating such a challenge, the court must first determine whether the presumption in favor of the legal parent was overcome by a showing of "unfitness" or "exceptional circumstances." Watkins, 163 N.J. at 247, 254. One of those grounds must be demonstrated before the court considers the second part of the custody analysis. Id. at 254. Exceptional

10

circumstances include situations where a third party "has stepped in to assume the role of the legal parent who has been unable or unwilling to undertake the obligations of parenthood."  V.C., 163 N.J. at 219.  In such cases, the third party may seek custody of the child, even when the biological parents are fit.  Id. at 219-20.  In the second step of the analysis, the court must analyze whether awarding custody or other relief to the third party would be in the best interests of the child.  Watkins, 163 N.J. at 254.

Importantly, only a third party who has stepped in to assume the obligations of parenthood has standing to raise a psychological parenthood claim.  See V.C., 163 N.J. at 219 (explaining who can show exceptional circumstances as psychological parent).  A stranger could not challenge a child's custodial placement because such a person could not show the exceptional circumstances required to obtain a best interests hearing.  P.B., 370 N.J. Super. at 598.

In V.C., 163 N.J. at 219-20, our Court set forth the standard for determining whether an individual is a psychological parent.  For a third party to prove psychological parenthood, he or she must demonstrate four elements.  Id. at 223.  First, the petitioner must show the biological or adoptive parent "consented to, and fostered, the petitioner's formation and establishment of a

A-1907-22

parent-like relationship with the child." Ibid. The term "fostered" means "that the legal parent ceded over to the third party a measure of parental authority and autonomy and granted to that third party rights and duties vis-a-vis the child that the third party's status would not otherwise warrant." Id. at 224. Also, "consent" will have different meanings under different scenarios. Id. at 223 n.6.

Second, the petitioner must show that "the petitioner and the child lived together in the same household." Id. at 223. Third, the petitioner must have "assumed the obligations of parenthood by taking significant responsibility for the child's care, education, and development without expectation of financial compensation." Ibid. The court should evaluate "the nature, quality, and extent of the functions undertaken by the third party and the response of the child to that nurturance." Id. at 226. Fourth, the petitioner must have been in a parental role for a length of time that was sufficient to have created a bond with the child that was parental and dependent in nature. Ibid.

The Court explained that what "is crucial . . . is not the amount of time but the nature of the relationship." Ibid. The bond between a psychological parent and the child need not be the same as or stronger than that of the bond between the biological parents and the child. Id. at 226-27. Notably, proof of

12

the parent-child bond is critically important and requires expert testimony. Ibid. In fact, the only prong of the psychological parent test requiring expert testimony is the fourth prong. Id. at 223, 227.

Overall, the four-prong analysis is fact-sensitive. Id. at 223. If successfully proven, a third party who is considered to be a psychological parent will be placed "in parity" with a legal parent for the purposes of a custody determination. Id. at 227-28, 230. Importantly, once a third party is "in parity" with the legal parent, the third party "stands in the shoes of the biological parent" and the court must then conduct a best interests analysis under N.J.S.A. 9:2-4(c). Watkins, 163 N.J. at 254.

After deciding the psychological parenthood issue, the court must then decide whether the award of custody or visitation to the third party would "promote the best interests of the child." Ibid. The court should focus on the "safety, happiness, physical, mental and moral welfare of the child." Beck v. Beck, 86 N.J. 480, 497 (1981) (quoting Fantony v. Fantony, 21 N.J. 525, 536 (1956)). At the same time, our Court has warned against removing a child from his or her parents because of the parents' limited means. Watkins, 163 N.J. at 252-53. As the Watkins Court noted, the best interests standard does not require any idealized lifestyles. Ibid. More specifically, the best interests

13

standard cannot mean the "better" interests of the child. Ibid. "It is not a choice between a home with all the amenities and a simple apartment, or an upbringing with the classics on the bookshelf as opposed to mass media, or even between parents or providers of vastly unequal skills." Id. at 254-55 (quoting N.J. Div. of Youth & Fam. Servs. v. A.W., 103 N.J. 591, 603 (1986)).

When an analysis of the child's best interests demonstrates that both the biological parent and the psychological parent are equally capable of caring for the child, custody will be awarded to the biological parent and visitation to the psychological parent. V.C., 163 N.J. at 234. Pursuant to N.J.S.A. 9:2-4(c), the court may enter an order that: provides joint custody of the child to both parents with provisions for residential arrangements that allow the child to reside with one parent or with both and, also, provisions for decision-making with regard to the child; awards sole custody to one parent with parenting time for the non-custodial parent; or sets forth any other custody arrangement as the court determines is in the best interests of the child.

We conclude, based upon the record before us, if the court finds jurisdiction, the court should conduct the required psychological parenthood analysis to determine if K.C.'s challenge to D.C.'s custody satisfied the legal

14

requirements. Specifically, the court should consider whether exceptional circumstances existed and, if so, then determine a custody award in the best interests of the child. The court failed to follow the required procedure in addressing custody of H.C., particularly the first step of the analysis. Rather, the court, made conclusionary statements without any testimony, hearing from experts, or considering further evidence.

We note the following. K.C. filed his OTSC under the existing FD docket number. The FD docket includes actions for child support, visitation, and non-parent relatives seeking custody. B.C. v. N.J. Div. of Child Prot. & Permanency, 450 N.J. Super. 197, 201 (App. Div. 2017). In contrast, the FN docket consists of abuse and neglect matters, "as well as children in need of services." Id. at 200, 205. Here, K.C. is a non-parent relative seeking custody of H.C. on the basis that he is a psychological parent and, also, that H.C. suffered physical abuse due to D.C.'s actions or inactions.

Typically, the court handles an FD matter in a summary fashion to promote the "purpose of swiftly and effectively disposing of matters which lend themselves to summary treatment." W.M., 467 N.J. Super. at 233 (quoting R.K. v. D.L., 434 N.J. Super. 113, 133 (App. Div. 2014)). For example, summary actions in the Family Part typically lack any exchange of

discovery. <u>R.K.</u>, 434 N.J. Super. at 133; <u>see also</u> <u>R.</u> 5:5-1 (setting forth discovery in actions except for summary actions).

Nevertheless, in <u>W.M.</u>, we explained that, because the plaintiff raised a "credible claim of psychological parenthood," the matter should not have been treated summarily. 467 N.J. Super. at 234. As it relates to the present case, <u>W.M.</u> is informative because the reviewing court suggested that the presentation of a credible claim for psychological parenthood should lead to further proceedings by the court instead of a summary decision on the FD case. <u>Ibid.</u>; <u>see also</u> <u>N.J. Div. of Child Prot. & Permanency v. C.S.</u>, 432 N.J. Super. 224, 226 (App. Div. 2013) (explaining the parties were required to obtain bonding evaluations considering best interests of child where the grandparents sought custody of their grandchild under an FD docket).

Based upon the record before us, we conclude K.C. had standing to claim he was H.C.'s psychological parent as he had stepped in to assume the role of the legal parent who was unable or unwilling to undertake the obligations of parenthood. The record on appeal reflects that he may have satisfied all four prongs of the psychological parenthood analysis. The court was required to consider his claims, allow for the parties to obtain expert evaluations, and hold a hearing as to exceptional circumstances.

To the extent we have not addressed K.C.'s remaining arguments, we are satisfied they are without sufficient merit to warrant further discussion in a written opinion.  R. 2:11-3(e)(1)(E).

We vacate and remand for further proceedings consistent with this opinion.  We express no opinion as to the ultimate outcome.

Vacated and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-1907-22