739 A.2d 969 (1999)
325 N.J. Super. 435
STATE of New Jersey, Plaintiff-Respondent,
v.
Betty KERN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 13, 1999.
Decided November 10, 1999.
*970 Ivelisse Torres, Public Defender, for defendant-appellant (Ruth Bove Carlucci, Assistant Deputy Public Defender, of counsel and on the brief).
John Kaye, Monmouth County Prosecutor, for plaintiff-respondent (John F. Loughrey, Assistant Prosecutor, of counsel and on the brief).
Before Judges PRESSLER, KIMMELMAN, and CIANCIA.
The opinion of the court was delivered by CIANCIA, J.A.D.
This appeal arises out of defendant's unsuccessful application to enter the Pretrial Intervention Program (PTI) and her subsequent conviction for theft by deception (welfare fraud) following a bench trial. The issues we decide include whether defendant's application for entry into the PTI program was appropriately denied, whether an incriminating statement by the defendant given at a PTI rejection hearing is admissible in the subsequent trial on the criminal charges, and whether the judge who presides at a PTI rejection hearing may also conduct the subsequent bench trial on the criminal charges.
A one-count indictment filed on March 15, 1995 charged Betty Kern with theft by deception, N.J.S.A. 2C:20-4, in that she failed to report employment income to the Monmouth County Board of Social Services "on or about and between July 1989 through September 1991...." The amount of theft was alleged to be $5,432. Defendant applied for admission to the Pretrial Intervention Program but was denied. She contested her rejection, and a hearing was conducted before the designated judge authorized to enter PTI orders. N.J.S.A. 2C:43-12(d); R. 3:28, Guideline 8. In the course of that hearing, defendant admitted her guilt of the criminal charges. The hearing judge denied the appeal of the PTI rejection, and defendant subsequently waived her right to a jury trial. The bench trial which followed was conducted by the same judge who heard defendant's appeal from the PTI rejection. Defendant was found guilty as charged and sentenced to a three-year period of probation. She was also ordered to pay $4,618 in restitution to the Monmouth County Board of Social Services. Appropriate penalties and fines were imposed.

I
Defendant contends that improper considerations caused her PTI rejection, and she should be reevaluated under the correct standards. We agree.
It is not clear who interviewed defendant, but it is clear that the interview was not the beginning of a beautiful friendship. Even from the cold record, the hostility directed at defendant is apparent. That hostility may have been fostered in part by defendant's personality. She is an emotional woman holding very definite opinions that she is not reluctant to express. A PTI applicant's attitude and demeanor are certainly relevant considerations in determining "amenability to correction and responsiveness to rehabilitation...," N.J.S.A. 2C:43-12(b), but all relevant factors must be considered. State *971 v. Bender, 80 N.J. 84, 93, 402 A.2d 217 (1979). As we said in State v. Imbriani, 291 N.J.Super. 171, 179, 677 A.2d 211 (App.Div.1996), "[c]onsideration of the individual and all of the surrounding circumstances is a necessity with respect to the PTI program."
Here many factors were considered by the interviewer but often superficially, sometimes inappropriately, and always in a way that cast defendant in the worst possible light. It may well be that defendant's attitude and demeanor prevented the interviewer from being objective, but defendant was nevertheless entitled to a full and fair evaluation.
The trial judge recognized some of these failings in the evaluation, but did not believe they compelled defendant's admission into the program. He was not prepared to say the refusal was a patent and gross abuse of discretion. Nor are we. We agree that ordering the prosecutor to accept defendant into the program was not the appropriate remedy. A prosecutor's decision to reject a PTI applicant is afforded great deference and will rarely be overturned. State v. Baynes, 148 N.J. 434, 443-444, 690 A.2d 594 (1997), quoting State v. Wallace, 146 N.J. 576, 585, 684 A.2d 1355 (1996), and State v. Nwobu, 139 N.J. 236, 246, 652 A.2d 1209 (1995). Nevertheless, even absent a patent and gross abuse of discretion, a decision to reject an applicant from PTI may be so deficient as to justify a reconsideration of the application. As our Supreme Court recently stated: "However, in cases of less egregious error on the prosecutor's part, for example, if a prosecutor fails to consider all the relevant factors or considers inappropriate factors, a court may remand the matter for further consideration [citation omitted]." State v. Caliguiri, 158 N.J. 28, 37, 726 A.2d 912 (1999). Stated somewhat differently, if a reviewing court finds that a prosecutor's decision was arbitrary, irrational, or otherwise an abuse of discretion, although not a patent and gross abuse, and if the court is satisfied that the remand will serve a useful purpose, it may send the case back to the prosecutor. State v. Wallace, 146 N.J. 576, 583, 684 A.2d 1355 (1996).
We are satisfied a remand would serve a useful purpose in the present case. In support thereof we note the following. As one reason for rejection the interviewer concluded that welfare fraud "affects society as a whole." N.J.S.A. 2C:43-12(e)(7). Certainly on some level all crimes affect society, but welfare fraud is not a disqualifying offense. See State v. Mickens, 236 N.J.Super. 272, 565 A.2d 720 (App.Div. 1989); State v. Burger, 222 N.J.Super. 336, 536 A.2d 1295 (App.Div.1988). The interviewer's further statement that defendant "may have deprived other families who may have really needed assistance" is unfounded and unwarranted.
The interviewer also concluded defendant's crime was part of a continuing pattern of anti-social behavior. N.J.S.A. 2C:43-12(e)(8). Her "previous contact with the law" and her "involvement with this offense" constituted the justification. In fact defendant's previous contact with the law consisted of a 1980 simple assault conviction disposed of by a Tacoma, Washington, municipal court with a $100 fine and a thirty-day suspended sentence. Two other municipal court charges, one in 1973 and one in 1989, were dismissed. The present charges apparently stem from her intermittent employment as a nurse while receiving welfare for seventeen months during a twenty-six-month period. In concluding that defendant was demonstrating a pattern of anti-social behavior, no mention was made that while on assistance in the late 1970's, defendant attended college and earned a practical nurse license. She was off welfare for a number of years and ultimately went back to college and became a registered nurse. She also raised six children and dealt with a failed marriage that may very well have involved an abusive husband. At the time of trial she had not received welfare since September 1991. Some consideration should have been given to that side of the *972 ledger before concluding defendant's conduct manifested "a continuing pattern of anti-social behavior."
The rejection form also contained references to defendant's assertions of innocence. However, Guideline 4 makes clear that enrollment in PTI programs should not be conditioned on admission of guilt. "Enrollment of defendants who maintain their innocence should be permitted unless the defendant's attitude would render pretrial intervention ineffective." R. 3:28, Guideline 4. We have no assurance defendant's claims of innocence were properly factored into the evaluation.
In reference to restitution and Guideline 3(k), the interviewer said defendant "does not have the financial means nor does she feel she should [pay restitution] since she and her husband are financially unable to do so." Again this remark was apparently based on defendant's attitude and not on the objective facts. Defendant is a registered nurse and has been off welfare since 1991. But for this conviction, defendant could have continued her profession. We also note that at sentencing defendant offered to pay $400 a month in restitution although the judge thought that amount too ambitious and set restitution at $100 a month.
Under the heading "2C:43-12(e)(13)" which concerns an applicant's involvement with "organized crime," the interviewer stated the "time frame in itself shows this was a well thought out criminal act." Thankfully for all of us, organized crime is not synonymous with a well thought out criminal act. Any reference to N.J.S.A. 2C:43-12(e)(13) was inappropriate on these facts.
The interviewer concluded that defendant failed to show "enough compelling reasons justifying her admission" into PTI. That standard is inappropriate as a basis for initial rejection. As Guideline 2 and the comment following it make clear, it is only subsequent to initial rejection, upon request for reconsideration, that the burden shifts to the applicant to demonstrate compelling reasons justifying admission.
For these reasons we are satisfied defendant's rejection from the PTI program was based upon a consideration of inappropriate factors and not premised on a fair consideration of all relevant factors. State v. Bender, supra, 80 N.J. at 94, 402 A.2d 217.

II
Defendant's next point concerns her conviction but relates to her failed efforts to enter the PTI program. At the start of the hearing on the PTI rejection, defendant's attorney told the judge defendant had just fired him and she wished to proceed to trial. The judge addressed defendant in an effort to clarify matters, and defendant volunteered she was guilty of the charge but had an explanation related to "a co-defendant involved in this." The judge immediately prevented her from saying anything further and went on to decide defendant's motion. As previously indicated, the judge upheld defendant's rejection from the PTI program.
Defendant waived her right to a jury trial, and the case was heard by the same judge who presided at her unsuccessful application to overturn the initial PTI rejection. In the course of trial, the prosecutor said he was aware of defendant's prior admission and wanted to call the assistant prosecutor who was present when the admission was made. Over defense counsel's objection, the assistant prosecutor was allowed to state his recollection "that the defendant admitted that she was guilty of the crime that she was charged with.... At that time the defendant said `I am guilty with an explanation. There is a co-defendant.'" In his decision finding defendant guilty of theft by deception, the trial judge acknowledged defendant's confession but said it was not critical in light of other fact findings he had made.
*973 Defendant contends her incriminating statement, made in the course of the hearing contesting her PTI rejection, was not admissible in her subsequent trial. We agree. R. 3:28, Guideline 5 provides:
Effective operation of pretrial intervention programs requires that a relationship of confidence and trust be initiated and maintained between participating defendants and staff. No information, therefore, obtained as a result of a defendant's application to or participation in a pretrial intervention program should be used, in any subsequent proceedings, against his or her advantage.
The official comment to the Guideline makes clear its intent that a defendant whose PTI application is unsuccessful not be prejudiced by that failed effort in a subsequent prosecution:
The essential PTI format is to give participating defendants a true second chance to accomplish rehabilitation or to show otherwise that criminal conduct is not likely to occur in the future; and if the defendant fails in this effort, to return him or her to that stage of ordinary prosecution at which proceedings had been stopped under R. 3:28, and to the extent possible, enable prosecution to take place as if such defendants had not participated in the PTI program so that defendants will not be prejudiced by an unsuccessful attempt to earn a R. 3:28 dismissal.
[R. 3:28, Guideline 5, Comment.]
Guideline 5 makes clear that information obtained during the application process is treated no differently from information obtained while a defendant is participating in the program. Nor, in our view, is it necessary that an applicant be accepted into the program to ensure that statements made during the application process are barred from further use.
Here the statements were made as part of the application process. The initial judicial review of a decision to reject an applicant from PTI participation, made by the designated judge (or the assignment judge) authorized to enter orders under R. 3:28, is but another step in the application process. This is implicit in our Supreme Court's direction that judicial review of a decision to not divert a defendant into PTI be abbreviated and informal in nature. The purpose of the hearing is to allow a defendant an opportunity to demonstrate error on the part of the prosecutor or program director in denying admission. State v. Leonardis, 73 N.J. 360, 382-383, 375 A.2d 607 (1977) (Leonardis II). If that demonstration of error is sufficient, defendant is granted admission into the program and absent a prosecutor's request for review by this court, the application process is completed.
Here the prohibition on the use of information garnered in the application process was violated when defendant's admission of guilt was allowed into evidence at her subsequent bench trial. The error was not harmless. Had this occurred during a jury trial the resultant prejudice could not be gainsaid. A judge sitting as the factfinder is certainly capable of sorting through admissible and inadmissible evidence without resultant detriment to the decision-making process, but here the circumstances went well beyond the usual evidential rulings made and discretion exercised by a trial judge during a bench trial.
The judge first heard defendant's confession when it was initially given. He then compounded the problem by permitting it into evidence at trial and not absolutely rejecting its relevance. To dismiss a confession of guilt as "not critical in light of the other fact findings" is, we think, contrary to human nature. The State's case against defendant was strong, but not so strong as to justify a finding that the erroneous introduction of defendant's confession was harmless error. See State v. Miller, 64 N.J.Super. 262, 265-266, 165 A.2d 829 (App.Div.1960).
*974 In light of our determination on this issue, we need not decide whether introduction of defendant's prior statement through the testimony of an assistant prosecutor, rather than by use of a transcript of the PTI hearing, violated the so-called "best evidence rule."
Totally aside from the erroneous introduction of defendant's confession during her criminal trial, we believe it inappropriate for a judge to hear an applicant's appeal from a PTI rejection and then, having affirmed that rejection, preside at a bench trial on the criminal charges.
R. 3:28(c)(4) provides:
During the conduct of hearings subsequent to an order returning the defendant to prosecution in the ordinary course, no program records, investigative records, reports made for a court or prosecuting attorney, or statements made by the defendant to program staff shall be admissible in evidence against such defendant. No such hearing with respect to such defendant shall be conducted by the designated judge who issued the order returning the defendant to prosecution in the ordinary course.
The present circumstances are not within the letter of R. 3:28(c)(4) because that provision speaks to defendants who have been admitted into the PTI program and then returned to the ordinary course of prosecution. However, the spirit and policy of the rule certainly support our determination that a judge who denies an applicant's appeal from PTI rejection not also sit on the ensuing bench trial for the criminal charges.

III
Because of the possibility of retrial, we also address defendant's contention, raised for the first time on appeal, that some of the acts of theft encompassed in the indictment were barred from prosecution by the five-year statute of limitations. N.J.S.A. 2C:1-6(b). The State contends defendant's acts constituted a single continuing course of conduct not shielded by the statute of limitations. On the record before us, we are reluctant to make a final decision on this fact-sensitive issue. In the first instance it is best heard by the trial judge who can flesh out the relevant information. We offer the following comments in anticipation of defendant's application to the trial court.
The wording of an indictment does not control the legality of the prosecution and the State does not contend otherwise. The actual facts must be evaluated. Here the trial judge found defendant was placed by different employment agencies into various temporary positions as a nurse from July 1989 through either September or November 1989; from April 1990 through August 1990; and from February 1991 through September 1991. During these periods she received welfare benefits in excess of her entitlement because she did not report her employment. The record is not clear whether between September 1989 or November 1989 and April 1990 and between August 1990 and February 1991 plaintiff was receiving welfare while not working or not receiving welfare at all. If defendant was receiving welfare continuously during the entire period, there were periodic recertifications. Whether any recertifications occurred while defendant was unemployed cannot be determined on the present record, but may be evidential as to whether the thefts were continuous.
We have no doubt that welfare fraud may be a continuing offense. The crime need not be considered complete each time a check is wrongly issued. Nor do we quarrel with the holding in State v. Tyson, 200 N.J.Super. 137, 490 A.2d 386 (Law Div.1984), where "defendant received numerous monthly overpayments during the entire period from 1974 until 1983" and the thefts were found to constitute a continuous course of conduct. Id. at 151, 490 A.2d 386. The factors that may distinguish the present case are the significant time gaps separating the periods of improper payments. *975 We doubt anyone would argue that welfare fraud committed, for instance, in 1982 and repeated again in 1995 constitutes a continuing offense. Nor is it likely anyone would successfully contend that many months of welfare fraud separated by only a month without fraud does not constitute a continuous course of conduct. Somewhere the line must be drawn but each case stands on its own facts.
Here it appears there were gaps of four or five months between periods of fraud. There was no actual proof of an overarching fraudulent intent. Nor was there a single false impression given that was relied on for the issuance of the erroneous checks between July 1989 and September 1991. Defendant worked through several employment agencies. There may be additional facts that bear on the issue.
There is also a consideration neither side raises. If the acts that occurred between July 1989 and September or November 1989 are separate and distinct from the subsequent crimes charged, then the events occurring during the period April 1990 to August 1990 may also be separate from the crimes alleged in the period February 1991 to September 1991. One consequence is a bar to prosecution but another is defendant's amenability to multiple charges.
Accordingly we think it best to defer ultimate resolution of this issue to the trial court, should defendant wish to pursue it.
For the reasons stated, defendant's judgment of conviction is reversed. The matter is remanded for a reassessment of defendant's eligibility for PTI. If defendant is retried, she may seek by way of motion a determination whether the statute of limitations precludes prosecution of any criminal acts alleged in the indictment. We do not retain jurisdiction.
Reversed and Remanded.