**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0387-15T1

STATE OF NEW JERSEY
IN THE INTEREST OF A.A.J.,

    A Juvenile.
_____

          Submitted January 25, 2017 — Decided March 15, 2017

          Before Judges Accurso and Manahan.

          On appeal from Superior Court of New Jersey,
          Chancery Division, Family Part, Essex County,
          Docket No. FJ-07-453-15.

          Joseph E. Krakora, Public Defender, attorney
          for appellant (Alison Perrone, Designated
          Counsel, on the brief).

          Carolyn A. Murray, Acting Essex County
          Prosecutor, attorney for respondent (Camila
          Garces, Special Deputy Attorney General/Acting
          Assistant Prosecutor, of counsel and on the
          brief).

PER CURIAM

    A.A.J. appeals from an adjudication of delinquency for
conduct which, if committed by an adult, would constitute second-
degree unlawful possession of a handgun, N.J.S.A. 2C:39-5b. We
affirm.

We derive the following facts from the hearing record. On the morning of August 22, 2014, the Irvington Police received two anonymous telephone calls expressing concern over a domestic disturbance. One of the callers alleged that individuals involved with the disturbance were in possession of guns. Both callers requested police be sent to "269 or 271 Ellis Avenue." Detective Algerome Burnett Crawford and Detective Thomas Turley were dispatched to the location. While en route, the detectives received a description of a 5'7" black male with shoulder-length dreadlocks wearing a black shirt and black pants involved in the incident.

Upon arriving in the area of 269 Ellis Avenue, the detectives' attention was drawn to an open door at the adjacent building, 267 Ellis Avenue.[1] Crawford witnessed one male standing in the open doorway, one male on the porch, and approximately three or four males in the hallway. The detectives approached the group and entered the building to investigate whether the individuals they observed had any involvement with the reported incident.

Upon entering the hallway, the detectives saw a stairwell with three steps leading to an apartment on the left and an

---

[1] The detectives were unable to determine the exact address of the building due to the open door. However, the building was located in the area of 269 Ellis Avenue.

apartment on the right. Crawford observed a black male at the top of the stairs who matched the reported description, by appearance and clothing, as an individual involved in the incident. This individual was later identified as A.A.J. According to Crawford, A.A.J. was acting "very nervous" and "was shaking uncontrollably." As the detectives approached A.A.J., he attempted to walk into the apartment on the left. Crawford told A.A.J. to stop so that he could speak to him. A.A.J. responded that he had just been in a fight prior to the detectives' arrival.

Based on the information from the phone calls, A.A.J.'s statement about being in a fight, his nervous behavior, and the description received by the police, Crawford instructed A.A.J. to place his hands on his head while he patted him down. When the pat-down reached his right pocket, A.A.J. moved his hands from his head toward the pocket. Crawford warned A.A.J. not to do this or he would be handcuffed. The pat-down resumed and Crawford felt a bulge he believed to be a handgun. While the detective was feeling the object, A.A.J. proceeded to move his hands toward the area two more times.

After feeling the bulge in A.A.J.'s right pants pocket, Crawford immediately handcuffed him. The detective removed the object from A.A.J.'s pocket, and confirmed it was a handgun. He

then removed the magazine, and made sure the weapon was unloaded. A.A.J. was taken into custody.

In an Essex County juvenile complaint, A.A.J. was charged with second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5b; fourth-degree possession of hollow point bullets, N.J.S.A. 2C:39-3f; and third-degree receiving stolen property, N.J.S.A. 2C:20-7. Subsequent to the filing of the complaint, A.A.J. filed a motion to suppress the handgun.

On April 27 and May 12, 2015, the Family Part judge conducted a consolidated hearing on both the issue of suppression and the issue of adjudication. At the conclusion of the hearing, the judge granted a motion for a judgment of acquittal on the receiving stolen property charge, N.J.S.A. 2C:20-7 and denied the motion to suppress. A.A.J. was adjudicated delinquent on the charge of unlawful possession of a handgun, N.J.S.A. 2C:39-5b, only. Concerning the motion to suppress, the judge held that A.A.J.'s temporary detention was "clearly appropriate," especially considering the calls to the police, the description of the suspect, the possibility of weapons being present, and A.A.J.'s "nervous" behavior.

The judge sentenced A.A.J. to an eighteen-month term of probation, but stayed the sentence pending the filing and disposition of a motion for reconsideration. On June 22, 2015,

4

the court denied A.A.J.'s motion for reconsideration and ordered that the eighteen-month term of probation begin. This appeal followed.

On appeal, A.A.J. raises the following points:

POINT I

THE LOWER COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESSS THE GUN UNLAWFULLY SEIZED BY POLICE. (U.S. CONST. AMENDS. IV AND XIV; N.J. CONST. (1947) ART. I, ¶ 7).

POINT II

THIS MATTER SHOULD BE REMANDED FOR A NEW [ADJUDICATION] HEARING BECAUSE THE COURT BELOW IMPROPERLY, AND OVER THE JUVENILE'S OBJECTION, HELD ONE COMBINED PROCEEDING TO RESOLVE BOTH THE MOTION TO SUPPRESS AND THE ADJUDICATION OF THE UNDERLYING CHARGES.

In reviewing a motion to suppress, we defer to the trial court's factual and credibility findings, so long as they are supported by the record. State v. Handy, 206 N.J. 39, 44 (2011). Deference is afforded because the "findings of the trial judge . . . are substantially influenced by his opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Reece, 222 N.J. 154, 166 (2015) (alteration in original) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). We disregard a trial court's factual and credibility findings only if clearly mistaken. State v. Hubbard,

222 N.J. 249, 262 (2015). The legal conclusions of the trial court, however, are reviewed de novo. Id. at 263.

The Fourth Amendment to the United States Constitution and Article 1, paragraph 7 of the New Jersey Constitution guarantee the right "of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures[.]" U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. The Fourth Amendment and Article 1, paragraph 7 of the New Jersey Constitution both "require[] the approval of an impartial judicial officer based on probable cause before most searches may be undertaken." State v. Patino, 83 N.J. 1, 7 (1980).

Warrantless searches are presumed invalid. State v. Gamble, 218 N.J. 412, 425 (2014); State v. Cooke, 163 N.J. 657, 664 (2000). "Any warrantless search is prima facie invalid, and the invalidity may be overcome only if the search falls within one of the specific exceptions created by the United States Supreme Court." State v. Hill, 115 N.J. 169, 173 (1989) (citing Patino, supra, 83 N.J. at 7). The State carries the burden of proving the existence of an exception by a preponderance of the evidence. State v. Amelio, 197 N.J. 207, 211 (2008), cert. denied, 556 U.S. 1237, 129 S. Ct. 2402, 173 L. Ed. 2d 1297 (2009).

One exception, based upon Terry,[2] is "the right of a police officer to conduct a brief, investigatory stop . . . ." State v. Morrison, 322 N.J. Super. 147, 151-52 (1999). "There must be 'some objective manifestation that the suspect was or is involved in criminal activity'" in order for a Terry stop to be considered valid. State v. Arthur, 149 N.J. 1, 8 (1997) (quoting State v. Thomas, 110 N.J. 673, 678 (1988)). In determining whether the investigative detention was justified under this reasonable suspicion standard, "a court must consider the 'totality of the circumstances - the whole picture.'" State v. Stovall, 170 N.J. 346, 361 (2002) (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621, 629 (1981)).

Once stopped, the "officer may conduct a reasonable search for weapons if he [or she] is 'justified in believing that the individual whose suspicious behavior he [or she] is investigating at close range is armed and presently dangerous to the officer or to others.'" State v. Richards, 351 N.J. Super. 289, 299 (App. Div. 2002) (quoting Terry, supra, 392 U.S. at 24, 88 S. Ct. at 1881, 20 L. Ed. 2d at 908).

A Terry stop and frisk are two separate constitutional events. Thomas, supra, 110 N.J. at 678-79 (explaining that "[u]nder the

---

[2] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

*Terry* rule, whether there is good cause for an officer to make a protective search incident to an investigatory stop is a question separate from whether it was permissible to stop the suspect in the first place."). A *Terry* search allows an officer "to pat down a citizen's outer clothing when the officer 'has reason to believe that he [or she] is dealing with an armed and dangerous individual, regardless of whether he [or she] has probable cause to arrest the individual for a crime.'" State v. Nishina, 175 *N.J.* 502, 514-15 (2003) (quoting *Terry*, *supra*, 392 *U.S.* at 27, 88 *S. Ct.* at 1883, 20 *L. Ed.* 2d at 909).

The reasonableness of a *Terry* search is measured objectively. *Thomas*, *supra*, 110 *N.J.* at 679. The officer conducting the search must "point to particular facts from which he [or she] reasonably inferred that the individual was armed and dangerous." *Ibid.* (quoting Sibron v. New York, 392 *U.S.* 40, 64, 88 *S. Ct.* 1889, 1903, 20 *L. Ed.* 2d 917, 935 (1968)). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger." *Terry*, *supra*, 392 *U.S.* at 27, 88 *S. Ct.* at 1883, 20 *L. Ed.* 2d at 909. Like reasonable suspicion to stop, the existence of reasonable suspicion to frisk "is based on the totality of the circumstances." State v. Roach, 172 *N.J.* 19, 27

(2002); <u>see also</u> <u>State v. Bard</u>, 445 <u>N.J. Super.</u> 145, 156 (App. Div. 2016) (slip op. at 10).  "[D]ue weight must be given" to the detective's experience.  <u>See</u> <u>State v. Valentine</u>, 134 <u>N.J.</u> 536, 543, 547-48 (1994) (quoting <u>Terry</u>, <u>supra</u>, 392 <u>U.S.</u> at 27, 88 <u>S. Ct.</u> at 1883, 20 <u>L. Ed.</u> 2d at 909).

Predicated upon the calls made to the Irvington Police detailing that individuals with handguns were arguing at a specified location, A.A.J.'s statement about previously being in a fight, and A.A.J.'s appearance matching the description received by the police, it was objectively reasonable for the detective to suspect that A.A.J. was armed with a handgun.  Given the totality of the circumstances presented, we conclude the pat-down was lawful.  <u>Roach</u>, <u>supra</u>, 172 <u>N.J.</u> at 27.

Finally, we address A.A.J.'s argument that the court erred by consolidating the motion to suppress hearing with the adjudication hearing.  Our review of the record reveals that the judge applied the proper legal standards, evidentiary rules, and differing burdens of proof when confronted with issues relating to each hearing.  While we do not approve the process of consolidation employed here, we nonetheless recognize that judges are "capable of sorting through admissible and inadmissible evidence without resultant detriment to the decision-making process.  <u>State v. Kern</u>, 325 <u>N.J. Super.</u> 435, 444 (App. Div. 1999).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0387-15T1