**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0063-23
A-3341-23

LARS M. BROWN,

    Plaintiff-Respondent,

v.

ELIZABETH K. BYHAM,

    Defendant-Appellant.

_____

Submitted April 30, 2025 – Decided July 30, 2025

Before Judges Currier and Paganelli.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FM-15-0759-21.

Elizabeth K. Byham, appellant pro se.

Lars M. Brown, respondent pro se.

PER CURIAM

In this post-judgment matrimonial matter, we consider, back-to-back, the appeals of defendant from trial court orders of: (1) April 14, 2023; (2) July 21, 2023;[1] and (3) May 15, 2024.[2]

"We accord deference to Family Part judges due to their 'special jurisdiction and expertise in family [law] matters.'" Gormley v. Gormley, 462 N.J. Super. 433, 442 (App. Div. 2019) (alteration in original) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). A family court judge's "findings are binding on appeal so long as their determinations are 'supported by adequate, substantial, credible evidence.'" Ibid. (quoting Cesare, 154 N.J. at 411-12). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to ensure that there is not a denial of justice." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007)). A judge's purely legal decisions, however, are subject to our plenary review. Crespo v. Crespo, 395 N.J. Super. 190, 194 (App. Div. 2007) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). Applying this well-established law, we affirm the three orders.

---

[1] A-0063-23.

[2] A-3341-23.

The parties were married on October 14, 2006, and they have two children,

L.B. and F.B.[3]  The parties executed a settlement agreement that was

incorporated into a final judgment of divorce entered on June 8, 2022.

As relevant here, the agreement provides:

> 1.  Custody – Parties agree to joint legal custody of the children, with [defendant] as the parent of primary residence and [plaintiff] the parent of alternate residence.  Joint legal custody is governed by N[.]J[.]S[.A.] 9:2-4 and 9:2-4.2 whereas both parents have equal rights to the children regarding major medical decisions, education of the children and religious upbringing.  Both parents shall be entitled to equal access to the children's parent portal at school, placed on emergency contact lists, permitted to attend any school meetings, events or provide transportation to and from school.  Both parents are allowed to arrange and take the children to their doctor appointments, treatments or therapies, to access the children's medical records and to talk to any treating professionals.  The for[e]going should always be done in consultation with the other parent.
>
> 2.  [Plaintiff] is not presently exercising parenting time and the reinstitution of parenting time will be accomplished with the assistance of a therapist that provides therapy to reunify parents and children. Parties agree to utilize Nina Kaweblum, LSW, [(Kaweblum)] who is appointed to assist . . . with reinstituting [plaintiff]'s parenting time. . . . Kaweblum will determine the manner and timing of renewing parenting time between [plaintiff] and the children and any appropriate conditions for the parenting.  She will

---

[3] We use initials to protect the identity of the children.  See R. 1:38-3(d)(13).

A-0063-23

determine the appropriate time for initial dinner visits, then daytime parenting and finally overnight parenting. It is the intention of the parties that ultimately . . . [plaintiff] will exercise alternating weekend overnight parenting Friday to Monday morning, although initially weekend visitation should be limited to Friday to Sunday evening as an interim step, and Wednesday dinner visits. Since [defendant] is providing all transportation for the children during the bulk of their parenting time [plaintiff] will transport both ways for his visitation.

3. Should . . . Kaweblum not be able to schedule an initial session with the parties within 30 days of this date, then the parties agree to utilize Thomas Mackarevich, Ph.[]D. [(Mackarevich)] in lieu of . . . Kaweblum. . . .

4. [Plaintiff] reserves the right to file a motion with the court to expedite the process of reinstituting parenting time without a showing of changed circumstances. Both parties agree to fully cooperate with the therapy sessions and getting the children to sessions. [Plaintiff] will coordinate with [defendant] to have therapy sessions scheduled for the children. [Defendant] will immediately respond within 24 hours to a request by [plaintiff] to schedule sessions for the children. Parties agree that therapy sessions should take place at least twice a month.

. . . .

6. Child support – Guidelines are attached. Child support is $160/week, effective with the signing of this agreement. [Plaintiff] will continue to provide health insurance for the children. [Plaintiff]'s obligation to provide health insurance for [defendant] shall terminate with the entry of the final judgment of divorce.

4

A-0063-23

. . . .

11. [Plaintiff]'s pension. Parties agree to split the marital coverture portion of the pension pursuant to the Marx[4] formula, 50/50 subject to passive gains and losses through date of distribution. Cost of the QDRO[5] to be split 50/50 between the parties. Parties to utilize Lois Fried.

. . . .

15. Each party shall be responsible for their own attorney['s] fees and costs. Mediation fees shall be split 60/40.

. . . .

19. [Defendant] shall be responsible for the first $250 per child of annual out[-]of[-]pocket medical expenses. Thereafter, out[-]of[-]pocket medical, as well as extraordinary extracurricular expenses shall be split between the parties pursuant to line 7 of the child support guidelines, currently 60/40. Extraordinary extracurricular expenses need to be agreed upon by the parties before seeking contribution, which consent shall not be unreasonably withheld.

April 14, 2023 Order

In December 2022, defendant "filed a [m]otion for [a] change in child support and health insurance." She followed that motion with a motion under

---

[4] Marx v. Marx, 265 N.J. Super. 418, 425-26 (Ch. Div. 1993).

[5] Qualified Domestic Relations Order.

the family non-dissolution docket seeking to change F.B.'s name.[6]   Plaintiff cross-moved in support of litigant's rights and moved to dismiss the name change application.  The name change action was dismissed without prejudice.

Defendant appeals from the following paragraphs of the April order:

> 1.  DEFENDANT'S REQUEST to appoint [d]efendant as the provider of the children's health insurance is GRANTED in part.  The parties shall attend economic mediation to select the best health insurance for the children.  A separate [o]rder for economic mediation shall be issued.
>
> 2.  DEFENDANT'S REQUEST to require [p]laintiff to remove children from his health insurance, effective immediately is DENIED without prejudice.  See above.
>
> 3.  DEFENDANT'S REQUEST to require [p]laintiff to pay 100% of all medical expenses incurred due to [p]laintiff preventing the children's new medical coverage from beginning on January 1, 2023, all bills to be paid within 15 days of receipt is DENIED without prejudice.  See above.
>
> 4. DEFENDANT'S REQUEST to award [d]efendant all medical fees incurred by [d]efendant and . . . [Z.B.], after August 1, 2022, which are due to [p]laintiff's delay in terminating their coverage with his health insurance is GRANTED in part.  This matter shall be addressed in mediation.  In the event this issue is not resolved via

---

[6]  The "FD" or "non-dissolution docket" "consists of child custody, visitation, child support, paternity, medical support, and spousal support in non-divorce matters."  B.C. v. N.J. Div. of Child Prot. and Permanency, 450 N.J. Super. 197, 205 (App. Div. 2017) (quoting N.J. Div. of Youth & Fam. Servs. v. I.S., 214 N.J. 8, 22 n.3. (2013)).

6

mediation, the parties shall contact the [c]ourt and the [c]ourt will schedule a pre-plenary hearing conference.

5.   DEFENDANT'S REQUEST to modify the child support guidelines, specifically:

> 1.  Gross Taxable Income,
> 2a.  Income Tax Withholding,
> 6.  Net Income,
> 7.  Each Parent's Share of Income,
> 8.  Basic Child Support Amount,
> 10.   Child's Share of Health Insurance Premium,
> 17.   Health Insurance Premium for the Child Paid,
> 20.   Adjustment for Parenting Time Expenses,
> 20a.  Number of Annual Overnights with Each Parent,
> 20b.  Parents Share of Overnights, and
> 21.  Net Child Support Obligation
> is DENIED without prejudice.

6.   DEFENDANT'S REQUEST to order [p]laintiff to pay his share of "extraordinary extracurricular activities" bi-weekly, or to establish an alternate system for [p]laintiff's prompt payment is GRANTED.  Parties shall communicate using Our Family Wizard.  Either party may upload receipts and proof of payment using Our Family Wizard's expense tool.  Each party shall be responsible to reimburse the other for their share of the prior month's expenses no later than the first of each month.

7.   DEFENDANT'S REQUEST to order a completed . . . (QDRO) if one has not been agreed to by the return date of this motion is GRANTED.   In the event the

A-0063-23

parties have not resolved this, they shall use Troyan, Inc.

. . . .

9.   PLAINTIFF'S REQUEST to enforce litigant's[] rights with respect to [p]aragraph [o]ne of the parties' MSA and [o]rdering that [d]efendant communicate with [p]laintiff with respect to all aspects affecting the children's health, education, and welfare is GRANTED. The parties shall utilize Our Family Wizard to communicate regarding the children.   Further, the parties shall mutually agree upon a parenting coordinator to assist with communication and decision-making and to make recommendations when the parties cannot agree.   The parties shall share in the cost according to their respective percentages.

10.  PLAINTIFF'S REQUEST to order that [d]efendant cooperate with ensuring that both children attend any and all rescheduled therapy sessions with . . . Kaweblum, and otherwise ordering [d]efendant to foster and encourage the children's reunification with [plaintiff] is GRANTED.

. . . .

15.  PLAINTIFF'S REQUEST to order that [d]efendant refrain from reinstating her pending application to change the name of the child, F[.]B[.], under docket FD-15-463-23 until agreement of the parties or further order of the [c]ourt is GRANTED.

16.  PLAINTIFF'S REQUEST to order that [d]efendant specifically refrain from further discussing with the children any ongoing litigation in this matter; from showing the children court filings or orders; from showing the children communications between the

8

parties, counsel and . . . Kaweblum; and otherwise, disparaging [p]laintiff to the children is GRANTED.

17. PLAINTIFF'S REQUEST to order that the parties specifically comply with the children's bill of rights is GRANTED.

July 21, 2023 Order

Defendant filed a motion for reconsideration of the April order. Plaintiff filed a cross-motion to enforce his litigant's rights. Defendant appeals the July order in its entirety. In this order, the trial court denied defendant's motion for reconsideration because defendant "failed to meet the requisite burden." The court relied on Rule 4:49-2. In addition, the July order provided:

2. PLAINTIFF'S REQUEST to [d]ismiss [d]efendant's motion in entirety is GRANTED, as per above.

3. PLAINTIFF'S REQUEST to find [d]efendant in violation of litigant's rights for her refusal to follow the [c]ourt's [o]rder and repeated direction regarding reunification therapy is GRANTED.

REASONS: The [c]ourt's April 1[4], 2023 [o]rder directed . . . [d]efendant to "cooperate with ensuring that both children attend any and all rescheduled therapy sessions with . . . Kaweblum, and otherwise ordering [d]efendant to foster and encourage the children's reunification with [plaintiff]," at [p]aragraph 10.

The [c]ourt's June 15, 2023 [o]rder directed [d]efendant to sign and return . . .

9

Kaweblum's retainer letter within three . . . days, and return to . . . Kaweblum for reunification therapy. . . . Kaweblum has since withdrawn her services.

Defendant has refused to comply with the directives of the [c]ourt with respect to fostering and encouraging the children's relationship with [plaintiff] and participation with the therapeutic reunification process in violation of [p]laintiff's litigant's rights.

4.   PLAINTIFF'S REQUEST to [e]nforce the parties' [f]inal [j]udgment of [d]ivorce and this [c]ourt's April 14, 2023 [o]rder with respect to cooperation with reunification therapy is GRANTED, as per above.

5.   PLAINTIFF'S REQUEST to [o]rder [d]efendant to make timely payment of her share of . . . Kaweblum's retainer and ongoing fees is GRANTED.  Defendant shall timely remit her share of any reunification therapist's retainer, regardless of whether the therapist is . . . Kaweblum.

Further, it was learned at oral argument that . . . Kaweblum will no longer work with this family.   The parties' agreement names three, mutually agreed upon, therapists so the [c]ourt will [o]rder the parties to retain and use the second therapist named, . . . Mackarevich.

6.   PLAINTIFF'S REQUEST to [o]rder that if [d]efendant refuses to pay her share of . . . Kaweblum's retainer and ongoing fees that he be permitted to pay her share and deduct same from the support he is paying to [d]efendant is DENIED.  [Plaintiff] shall provide

10

proof of payments and [plaintiff] may deduct his share from his portion of extracurricular activity costs.

7. PLAINTIFF'S REQUEST to [o]rder that [d]efendant will be sanctioned for further non-compliance of this [c]ourt's [o]rders and ordering that such sanctions may include monetary penalties and a change in custody is GRANTED pursuant to R[ule] 1:10-3 and R[ule] 5:3-7(a).

8. PLAINTIFF'S REQUEST to [o]rder [d]efendant to pay [p]laintiff's attorney's fees and costs incurred with respect to this matter and ordering that such counsel fee award be offset against [p]laintiff's ongoing support obligations is GRANTED, in part. Defendant shall pay [p]laintiff $1,000 to be used towards the $1,800 in counsel fees [d]efendant incurred. Plaintiff shall pay [d]efendant $100/month for ten . . . months, payable on the 15th day of each month.

REASONS: [Defendant] is sanctioned $1,000 pursuant to R[ule] 1:10-3. [Defendant] shall not be permitted to openly defy court orders without penalty. Based on her bad faith and failure to abide [by c]ourt [o]rders, and the number of opportunities [d]efendant has been given to comply, the court finds that an award of some of [p]laintiff's counsel fees are appropriate. The [c]ourt also finds that [p]laintiff's counsel is charging a more than reasonable hourly fee of $250, especially given his level of knowledge and expertise.

On appeal, defendant contends the trial court erred because: (1) its reasoning under N.J.S.A. 9:2-4 and the parties' agreement was flawed as the court exceeded the scope of the agreement, appointed Mackarevich even though

11

Kaweblum had initiated therapy,[7] failed to adequately address "changed circumstances," and did not allow her to share court orders with the children and required her to foster and encourage reunification; (2) it allowed plaintiff to include inadmissible "hearsay and fraudulently quote . . . Kaweblum without referencing competent sources"; (3) it failed to "render a decision on the matters presented on April 14, 2023, and instead refer[red] them to mediation, constitut[ing] a dereliction of its duty to adjudicate promptly and fairly"; (4) it improperly awarded plaintiff attorney's fees without any "indication . . . [it] took any of the" factors listed in Rule 5:3-5(c) "into account"; and (5) it denied reconsideration despite making a "fundamentally unjust" decision that "depart[ed] from reasonable judgment."

1.

We conclude there is no merit in defendant's arguments concerning the trial court's interpretation of the parties' agreement and N.J.S.A. 9:2-4. The court's requirement that "[d]efendant communicate with [p]laintiff with respect to all aspects affecting the children's health, education, and welfare" captured the spirit and intent of the parties' agreement and the statute.

---

[7] In other parts of her brief defendant claims she "met with . . . Mackarevich before [the trial court] even assigned him as the new therapist."

A-0063-23

Further, defendant's hyper-technical reading of the agreement to disallow the court's appointment of Mackarevich, who the parties agreed would be the alternative to Kaweblum, merely because Kaweblum had initiated therapy is similarly without merit.

In addition, defendant's position that plaintiff was required to establish "changed circumstances," rather than the court turning to Mackarevich, is meritless. First, a hearing on something the parties had already agreed upon would waste judicial resources and further delay reunification. Second, defendant fails to explain how Kaweblum's resignation did not constitute the sought after changed circumstances.

Lastly, the trial court's requirements that defendant shield the children from the court's proceedings and "foster and encourage" the reunification process with the children is an exercise of the court's authority. There is no merit to the argument that the court could not order such relief merely because it was not explicitly stated in the parties' agreement.

2.

Defendant asserts the court erred in considering hearsay statements of Kaweblum presented in plaintiff's certification. "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or

13

hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." N.J.R.E. 801(c).

We note "[a] judge sitting as the factfinder is certainly capable of sorting through admissible and inadmissible evidence without resultant detriment to the decision-making process . . . ." State v. Kern, 325 N.J. Super. 435, 444 (App. Div. 1999). "When objectionable hearsay is admitted in a bench trial . . . we presume that the fact-finder appreciates the potential weakness of such proofs, and takes that into account in weighing the evidence." N.J. Div. of Child Prot. & Permanency v. J.D., 447 N.J. Super. 337, 349 (App. Div. 2016). Under these circumstances, given the Family Part's special expertise, the court's familiarity with the matter, and no indication the court relied on any hearsay, we are satisfied the trial court gave any hearsay statement its due weight.

### 3.

We also see no merit to defendant's contention that the court erred in referring certain issues to mediation. "Settlement of disputes, including matrimonial disputes, is encouraged and highly valued in our system." Quinn v. Quinn, 225 N.J. 34, 44 (2016). Therefore, it is commonplace for trial courts to provide matrimonial litigants with every opportunity to resolve their issues

A-0063-23

among themselves. Thus, there was no error in the court's referral of the parties to mediation.

4.

The trial court sanctioned defendant pursuant to Rules 1:10-3 and 5:3-7(a). Rule 1:10-3 provides: "The court in its discretion may make an allowance for counsel fees to be paid by any party to the action to a party accorded relief under this rule. In family actions, the court may also grant additional remedies as provided by R[ule] 5:3-7."

Under Rule 5:3-7(a), "[o]n finding that a party has violated an order respecting custody or parenting time, the court may order, in addition to the remedies provided by R[ule] 1:10-3, any of the following remedies, either singly or in combination: . . . (2) economic sanctions . . .; (10) any other appropriate equitable remedy."

Defendant baldly asserts there is "no indication" the court conducted the correct analysis. However, counsel submitted the required certification of services. We conclude the trial court did not misuse its discretion in imposing the sanction to compel defendant's cooperation.

15

5.

"Reconsideration is a matter within the sound discretion of the [c]ourt to be exercised in the interest of justice." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990) (citing Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 257 (App. Div. 1987)). "A litigant should not seek reconsideration merely because of dissatisfaction with a decision of the [c]ourt." Ibid. Instead,

> [r]econsideration should be utilized only for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Ibid.]

"Alternatively, if a litigant wishes to bring new or additional information to the [c]ourt's attention which it could not have provided on the first application, the [c]ourt should, in the interest of justice (and in the exercise of sound discretion), consider the evidence." Ibid.

Because we determine that none of these circumstances are present, we conclude the trial court did not misuse its discretion in denying reconsideration.

16

May 15, 2024 Order

In September 2023, plaintiff filed a motion seeking a trial court finding of changed circumstances and a downward modification of his child support obligation. Defendant filed a cross-motion in opposition. Thereafter, the court entered a series of orders: (1) January 2024, "finding a change in circumstances" therefore requiring new calculations under the child support guidelines and ordering the parties to "exchange their updated [c]ase [i]nformation [s]tatements [(CIS)], 2022 tax returns, and last three most recent paystubs"; (2) March 2024, requiring defendant to submit her updated CIS within seven days; and (3) April 2024, requiring the parties to "exchange and submit to the [c]ourt [their] 2023 tax returns, 2023 W2s and financials within 20 days."

In the May 15, 2024 order, the trial court granted plaintiff's "request to order an adjustment in [c]hild [s]upport payments." The court applied the Lepis standard.[8] The court found plaintiff satisfied his burden to establish changed circumstances because of a change in a "tax exemption" and "a change in circumstance as [p]laintiff's income has increased significantly and also [d]efendant is voluntarily underemployed."

_____

[8] Lepis v. Lepis, 83 N.J. 139 (1980).

A-0063-23

As to defendant's employment, the court noted defendant "states that she has three master's degrees and . . . is a school teacher at Ocean County Vo-Tech." The court also noted defendant "submitted documentation by way of tax return that she made $35,481[] per her 2023 tax return."

The trial court found: (1) "[t]he U.S. Bureau of Labor Statistics [state] that the annual mean wage for teachers at a secondary school is $74,410[]"; (2) "the Department of Labor wage statistics reveal the mean annual wage for a secondary school math educator as $73,000[] in vocational or technical schools"; and (3) defendant failed to "provide a reason why she has such a low wage compared to the information on mean wages" and "[i]t is not clear why she does not work full-time." Therefore, "[t]he [c]ourt f[ou]nd that [d]efendant [wa]s voluntarily underemployed." Further, "[b]ased on the circumstances the [c]ourt . . . impute[d defendant's] income [at] $73,000."

As to plaintiff, the court found "he made $176,741[] per his 2023 tax return." The "[c]ourt f[ou]nd that $176,741[ wa]s an accurate representation of [p]laintiff's income."

Further, the court found "[p]laintiff [would] be credited with [zero] overnights." "The [c]ourt acknowledge[d] that [d]efendant [wa]s partially the

cause of this situation,"—plaintiff's lack of overnights—but specifically rejected plaintiff's argument for credits, noting child support was "the right of the child."

In addition, the court found plaintiff provided "health insurance as required by the parties[']  . . . [a]greement and it w[as] . . . included as such on the" child support guidelines.  "The [c]ourt reject[ed d]efendant's argument that the children ha[d] free government provided benefits."  The court found "[f]irst, the [parties' agreement] require[d p]laintiff to provide the health benefits and second, . . . government benefits [we]re not provided to the children because there [we]re private health benefits available."

Further, the trial court found "there [wa]s no increase due to the age of the children as this [wa]s not the first [c]hild [s]upport [g]uideline to be run for these children."

The trial court determined "the new weekly child support amount [would be] $164[]."  The court imposed "[t]he new child support amount . . . retroactive to . . . the date of [d]efendant's cross[-]motion."

On appeal, defendant contends the trial court erred by:  (1) imputing her income; (2) "calculating taxable income and dependent split"; (3) "requiring [her] to pay plaintiff's health insurance premium"; (4) "refus[ing] to adjust for

19

the age of the children"; and (5) "fail[ing] to protect [her] children's right to child support."

1.

Defendant argues the trial court erred when it imputed income to her because it failed to consider "her detailed explanation of" specific factors listed under the court rules.

Imputation of income is appropriate for support purposes when a party is, without just cause, intentionally and voluntarily underemployed or unemployed. See Caplan v. Caplan, 182 N.J. 250, 268 (2005) (imputing income in determining child support awards). We have explained:

> Imputation of income is a discretionary matter not capable of precise or exact determination but rather requiring a trial judge to realistically appraise capacity to earn and job availability. Rarely is there evidence that an obligor turned down an offer of employment at a fixed amount, and proof of that or similar certainty is not a prerequisite to imputation. A trial judge's decision to impute income of a specified amount will not be overturned unless the underlying findings are inconsistent with or unsupported by competent evidence. Competent evidence includes data on prevailing wages from sources subject to judicial notice.
>
> [Storey v. Storey, 373 N.J. Super. 464, 474-75 (App. Div. 2004) (internal citations omitted).]

A-0063-23

The trial court considered defendant's education and her current employment status. Further, the court utilized government resources to determine the mean income for defendant's profession. In addition, the court considered that defendant did not explain her part-time work status. Under these circumstances, we conclude the court did not misuse its discretion and do not disturb defendant's imputed income.

2.

Defendant argues the trial court "made significant errors in calculating both taxable income and the dependent split." She contends the court "improperly included non-taxable income as taxable." However, aside from her generalized statements, defendant fails to provide any specific detail regarding the trial court's error. Plaintiff asserts the trial "court properly calculated the taxable income split." He notes the guidelines "clearly show [his] taxable income and correctly applied the federal, state and local taxes." In the absence of a detailed argument, we do not disturb the trial court's decision.

Further, defendant asserts the trial "court incorrectly attributed both dependents to [her], contrary to the clear evidence that the dependents should have been split between the parties." Plaintiff "agree[s] with . . . [d]efendant's . . . statement that [their] dependents are split between the parties." However,

A-0063-23

he asserts "[i]t[ i]s unclear if this . . . changes the federal, state, and local taxes withheld in the [guidelines] calculation."  Again, in the absence of a detailed argument, we do not disturb the trial court's decision.

3.

Defendant relies on the language from the appendix to the child support guidelines that provides: "If the custodial parent and the child receive Medicaid, the non-custodial parent shall be ordered to enroll the child in a health insurance plan if it is available at a reasonable cost."[9]  She states "the children have free government benefits, it is an indisputable fact."  Further, she notes the parties' agreement "does not state that [she] ha[s] to pay for [plaintiff's] health insurance."  Ultimately, she argues if she "cannot convince the [c]ourt to cease from making [her] pay for [p]laintiff's health insurance premium, the [c]ourt should at least charge [her] the correct amount."  She asserts she is wrongly being charged for the premium attributable to plaintiff, rather than just the premium attributable to the children.

---

[9]  Child Support Guidelines, Pressler & Verniero, <u>Current N.J. Court Rules</u>, Appendix IX-A to <u>R.</u> 5:6A, ¶ 26(f) (2025).

22

Plaintiff contends defendant "does not contribute to [his] health insurance premiums." Instead, he asserts his health insurance premiums "are included in calculating [his] available income for child support purposes."

We start from the premise that the court rules require that where there is health insurance available, at a reasonable cost, the children should be enrolled. In addition, the parties' agreement requires plaintiff "to provide health insurance for the children." Therefore, plaintiff correctly has continued to provide health insurance for the children.

Defendant's argument that she is paying plaintiff's insurance premiums is not supported in the record. Rather, as plaintiff notes, the guidelines represent his available income for child support calculations.

4.

Defendant contends the trial "court's failure to render an adjustment due to the age of the children [wa]s a gross error or a blatant bias against" her. She notes the guidelines "were first run two years prior" when "[t]he children were 13 and 15." Further, she asserts "they should have qualified for the age adjustment at the time" but the guidelines were "improperly r[u]n" and her children were "cheated . . . out of the support that they were owed."

23

Child support is necessary to ensure that parents provide for the "basic needs" of their children. Pascale v. Pascale, 140 N.J. 583, 590 (1995). "A party seeking modification of . . . [a] child support obligation has the burden of demonstrating a change in circumstances warranting an adjustment." Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012) (citing Lepis, 83 N.J. at 157). Our "courts have recognized 'changed circumstances' that warrant modification in a variety of settings . . . includ[ing]: . . . [the] increase or decrease in the supporting spouse's income" and "[w]hen children are involved, an increase in their needs -- whether occasioned by maturation, the rising cost of living or more unusual events . . . ." Lepis, 83 N.J. at 151.

However, defendant cannot sustain her burden by merely stating the children have aged. Instead, she needs to produce evidence establishing that the children's maturation requires an increase in plaintiff's child support obligation. Absent any evidence, defendant has not met her burden.

5.

In a catchall argument, defendant asserts that "[d]espite [her] repeated request for the [trial] court to hold [p]laintiff accountable for adequately supporting the children, the court consistently sided with [p]laintiff, ignoring

24

A-0063-23

evidence that he is underpaying." As discussed in this opinion, we find no merit in defendant's arguments.

Any arguments not addressed lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

25