# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1023-24

M.Z.,[1]

    Plaintiff-Respondent,

v.

V.R.,

    Defendant-Appellant.

_____

        Submitted October 20, 2025 – Decided December 9, 2025

        Before Judges Walcott-Henderson and Bergman.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-0981-23.

        V.R., self-represented appellant.

        M.Z., self-represented respondent.

PER CURIAM

---

[1] We use initials to protect the privacy of the minor children. R. 1:38-3(d).

Defendant V.R. appeals from orders entered by the Family Part concerning post-judgment dissolution issues. She challenges, both procedurally and substantively, four separate orders, the last two of which were entered without prejudice, claiming the trial court erred (1) in granting plaintiff sole custody of the parties' two minor children and providing her supervised parenting time; (2) in considering expert and lay evidence from a previous family neglect ("FN") litigation; and (3) in misapplying certain procedural requirements. After our review of the record and application of the relevant legal principles, we affirm.

I.

The parties married in December 2014. Two children were born of the marriage in 2019 and 2022. They divorced in July 2023, by way of a Dual Final Judgment of Divorce, which incorporated a Marital Settlement Agreement ("MSA") signed that same month. Pursuant to the MSA and a March 2023 consent order, joint legal custody of the children was awarded to the parties, with defendant designated as the parent of primary residence and plaintiff as the parent of alternate residence.

Following the divorce, a prolonged course of post-judgment litigation ensued, featuring at least six Division of Child Protection and Permanency

("DCPP" or "Division") investigations, questions of parental fitness, therapeutic visitation, and allegations of harassment between the parties. These proceedings intertwined with DCPP litigation under the FN docket.

We summarize the issues now on appeal by way of the following timeline. In July 2023, a referral was made to the DCPP initiated by the parties' co-parenting therapist, citing concerning behaviors of defendant. In August 2023, the DCPP initiated the FN litigation and the children were removed from defendant's custody and placed with plaintiff based on expert recommendations provided in the FN litigation. As a result, defendant consented to a psychological evaluation and was granted only supervised visitation with the two children. In October 2023, plaintiff obtained an order continuing physical custody of the children with him. In that same month, defendant and the children started therapeutic visitation, and defendant was required to obtain updated psychological evaluations as part of the FN proceeding.

On January 18, 2024, an FN order was entered dismissing the Title 9 portion of the complaint but continued the FN proceeding for care and supervision under Title 30. On January 26, the parties entered into a Civil Restraints Agreement, whereby defendant consented to have no contact with

plaintiff's current or future employers about the status of their family and not to harass plaintiff and his immediate family members.

In December 2023, the therapeutic visitation provider appointed in the FN litigation terminated its services due to defendant's noncompliance with the programs' rules. In March 2024 defendant completed a "Parents as Teachers" program where her providers noted improved communication, but in April 2024, the second therapeutic visitation provider terminated its services, also citing inappropriate conduct by defendant during the visitations. In her discharge report, the therapeutic visitation facilitator recommended that defendant undergo mental health treatment, parental assessment, and a psychological evaluation. Thereafter, the court required defendant to engage in therapeutic visitation with a third provider but she refused. In response, the FN court entered an order suspending her parenting time pending her entry into therapeutic visitation.

On July 5, 2024, in a separate proceeding, plaintiff obtained a Temporary Restraining Order against defendant under the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35. On September 30, 2024, a Final Restraining Order ("FRO")[2] was entered in favor of plaintiff against defendant. After a

---

[2] Defendant appealed the FRO, which is currently pending under A-1023-24.

multiple day hearing, the FRO court determined defendant harassed plaintiff and that an FRO was necessary to protect plaintiff from future harassment. In that proceeding, plaintiff alleged defendant committed harassment by appearing at his apartment where he resided with the children without a valid reason and contrary to both the court order suspending her parenting time and the civil restraints agreement entered into by the parties in January 2024.

On October 7, 2024, in the FN matter, the court ordered "[defendant's] contact with both the minor children shall occur only within therapeutic supervised visitation conducted by a licensed therapist approved by the Division, pending further order of the [c]ourt." On November 1, 2024, the FN court ordered that "[plaintiff] shall temporarily have sole legal custody of [the two minor children], pending further order of the Court." On November 8, the FM court granted plaintiff's unopposed motion to incorporate the FN custody terms into an FM order, granted plaintiff sole legal and physical custody of the children and required defendant to pay child support to plaintiff.

Defendant contacted the motion court claiming she had filed a cross-motion on or about November 8 prior to the court's decision which was not considered. Thereafter, she filed a reconsideration motion on November 10. In an order and written decision dated November 12, 2024, the court re-opened the

A-1023-24

proceeding, considered and then denied defendant's cross-motion and reconsideration motion in a written decision.

The court's decision stated:

> Here, exigent circumstances exist to modify the existing custody arrangement [in the MSA] between the parties, namely [d]efendant's demonstrated detrimental impact on the children and the attenuated mental health of the children. Moreover, [p]laintiff has been effectively exercising full physical custody of the children since August 17, 2023, when the children were removed from [d]efendant by DCPP and placed in [p]laintiff's care. Plaintiff has also already been granted full physical custody by virtue of [c]ourt [o]rder entered in the parties' FN matter since at least October 13, 2023. Defendant has not even seen the children since April 9, 2024, since she purportedly refuses to comply with [c]ourt-[o]rdered supervised therapeutical visitation.

Further, the court explained:

> [I]n the supervised visitation summaries from late 2023 which the [c]ourt has had the opportunity to review, in camera, the [d]efendant was clearly displaying troubling, detrimental [behavior] to the children's welfare. For example, it was reported that [d]efendant was defiant, would overstep, not follow rules, would confuse the children, and would say upsetting and inappropriate things to the children during the visits. Defendant was also observed to have lied and bargained with the parties' son to say things in exchange for getting new toys. It was also reported that [d]efendant challenged the provider and [physically] pushed the provider every time she walked past the provider. Thus, it is hardly surprising that the supervisors

6

terminated those supervised visits due to [d]efendant's conduct. It bears repeating that [d]efendant then refused to work with the third therapeutic visitation provider, although it stands to reason that this too would be terminated and unsuccessful, unless and until [d]efendant addressed her mental health issues.

Concerning the effect of the FN orders, the court clarified it:

[I]s not making any independent findings regarding custody and parenting time. Rather, in light of the active FN matter, this [c]ourt is deferring to [the FN court]. More specifically, by entering an [o]rder in this post judgment matter that [p]laintiff shall have temporary legal and physical custody pending further [o]rder of the [c]ourt, this [c]ourt is simply codifying what has already been [o]rdered by the FN [c]ourt. At such time as that FN litigation is concluded, either party can make application to modify custody and parenting time.

Thereafter, on November 22, 2024, the FN court entered an order which, in relevant part stated: "This litigation is terminated . . . the court has determined that the children are safe in the physical and legal custody of their father and the remaining issues, including physical and legal custody and visitation/parenting time, must be resolved under [the FM matter]." The order continued by stating:

Any attempted modification of legal or physical custody must be sought under the [FM matter]. Pending order of the court under the [FM matter], there shall be no visitation/parenting time. Visitation/parenting time must be sought by application under [the FM matter]. All medical records sought by [V.R.] shall be requested [in the FM matter].

7

On that same date, defendant filed an Order to Show Cause ("OTSC") in the FM matter requesting sole residential custody of the children. The OTSC was decided by a different FM judge resulting in an order and decision under date of December 3, 2024. The court's written decision accompanying the order found that on November 1, 2024 an FN order was entered stating plaintiff "shall temporarily have sole legal custody of [the two minor children], pending further order of the [c]ourt." The court further noted:

> [T]here have been six [] separate Child Protective Services . . . investigations in the past two years regarding both parties, however the allegations [against plaintiff] of sexual and emotional abuse were deemed "unfounded" or "not established" as were the allegations against defendant for inadequate supervision and the allegations against both parties for neglect.

The court also stated "DCPP [found] it does not have any concerns for the children [being] in the care of [p]laintiff, and DCPP has assessed [p]laintiff's home and deemed it to be safe for the children." The court added, "DCPP remains concerned for defendant's interactions with the children without the supervision of a licensed therapist" and "[a]dditionally, [d]efendant has not seen the children since April 9, 2024, because she purportedly refuses to comply with [c]ourt-[o]rdered supervised therapeutical visitation."

A-1023-24

The court concluded:

> On November 30th, 2023, January 1st, 2024, and January 18th, 2024, the [FN] [c]ourt had ordered the [d]efendant to attend trauma focused CBT Therapy through Mind your Mind and comply with their recommendations. Additionally, on April 10th, 2024, the [d]efendant was ordered to comply, on consent, with recommendations of the psychological evaluation to extent she has not done so. Defendant has failed to comply with each of these previous [c]ourt [o]rders. DCPP reportedly closed their most recent case because of the [d]efendant's noncompliance, and because the [p]laintiff retains sole residential custody of the children absent visitation from the [d]efendant. It appears that the [d]efendant is attempting to circumvent her deficiencies by filing various motions and [OTSCs] seeking parenting time when parenting time was to be supervised under DCPP. The [d]efendant's pending motion will be heard in its due course.

Thereafter, on December 6, 2024—the return date set for defendant's converted OTSC—the court denied her application without prejudice for sole custody of the children. The court reiterated its prior reasons in its denial of defendant's OTSC, i.e. her non-compliance with the provisions in the FN orders concerning therapeutic visitation, psychological evaluations, and that she had not had contact with the children since April 2024. The court further found the application was not supported by any "organized, relevant evidence" to support a change to the prior custody orders. An order was entered denying defendant's

9

motion without prejudice and continuing the November 12 order which granted plaintiff sole custody through the incorporated FN dismissal order.

On appeal, defendant contends the FM court: (1) failed to conduct an independent best interests analysis, improperly deferred to FN court orders and disregarded evidence of the children's welfare; (2) erred by failing to consider qualified expert testimony supporting her parental fitness, instead relying on unqualified expert opinions and inadmissible records; and (3) committed "procedural irregularities"—including a failure to consider her motion(s), its denial of oral argument, its refusal to consider documentary evidence, and its entry of medical findings without expert support—which she claims collectively violated her due process rights. We are not persuaded by any of these contentions.

## II.

Family courts maintain "special jurisdiction and expertise in family matters," and "appellate courts should accord deference to [the] family court['s] factfinding." Cesare v. Cesare, 154 N.J. 394, 413 (1998). "Discretionary determinations, supported by the record, are examined to discern whether an abuse of reasoned discretion has occurred." Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017).

Our standard of review is that we will not disturb a trial judge's factual findings when they are "supported by adequate, substantial and credible evidence." Rova Farms Resort v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974). We only "disturb the factual findings and legal conclusions of the trial judge [when] we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). However, "all legal issues are reviewed de novo." Ricci, 448 N.J. Super. at 565 (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

## A.

We first address defendant's contention the FM courts failed to conduct an independent best interests analysis and improperly deferred to the FN court orders and disregarded evidence of the children's welfare. "A custody arrangement adopted by the trial court, whether based on the parties' agreement or imposed by the court, is subject to modification based on a showing of changed circumstances, with the court determining custody in accordance with the [child's] best interests." Bisbing v. Bisbing, 230 N.J. 309, 322 (2017). The moving party must first show "a change of circumstances warranting

modification" of the extant custody and parenting time order.  Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015) (quoting R.K. v. F.K., 437 N.J. Super. 58, 63 (App. Div. 2014)).

The moving party in a custody-modification motion is not entitled to . . . an evidentiary hearing without meeting "the threshold standard of changed circumstances." J.B. v. W.B., 215 N.J. 305, 327 (2013); see also Lepis v. Lepis, 83 N.J. 139, 157 (1980) ("[a] prima facie showing of changed circumstances must be made before a court will order discovery").  A prior custody order, "whether reached by consent or adjudication, embodies a best interests determination." Todd v. Sheridan, 268 N.J. Super. 387, 398 (App. Div. 1993).  With that determination having been made in a prior custody order, a party seeking to modify the order "must bear the threshold burden of showing changed circumstances which would affect the welfare of the children." Ibid.

"Judges who handle FN and [FM] dockets may choose to handle the matters separately or at the same time." B.C. v. New Jersey Div. of Child Prot. & Permanency, 450 N.J. Super. 197, 206 (App. Div. 2017).  Thus, the same judge aware of all of the evidence surrounding the welfare of the children should ordinarily preside over both proceedings, whether the FM matter is heard at the same time as the FN matter or not.  Ibid.  However, hearing both matters

12

simultaneously is not necessarily preferable.  Ibid.; see also New Jersey Dep't of Children & Families, Div. of Youth & Family Servs. v. I.S., 214 N.J. 8, 42 (2013) (stating "it is preferable for the court to ensure there are separate and distinct proceedings" for a Title 30 FN action and an FM custody dispute, however "procedure may not always prevail").

In I.S., the Division of Youth and Family Services filed a complaint seeking custody of twin girls after their mother, who was overwhelmed and unable to manage their special needs, requested assistance.  Id. at 40.  At the conclusion of residential treatment, one of the twins was discharged to live with her father who had not previously had custody.  The FM court granted custody under a best-interests-of-the-child analysis, finding this was the only appropriate disposition to end Title 30 proceedings since the mother had not completed her required treatment and presented no evidence that it was safe to return the child to her care.  Importantly, our Court in I.S., determined a trial court has discretion to adjudicate child welfare matters with custody matters at the same time, as long as the parents are not prejudiced.  Id. at 39-42.  In I.S., the Court affirmed the trial court's consolidation of a Title 30 action with a custody action.  Id. at 41.

A-1023-24

We conclude there is overwhelming evidence in the record supporting the FM court's findings culminating in the November 12 order, which essentially deferred to the custody determinations and order in the active FN litigation. There is undisputed evidence in the record that defendant refused to abide with the requirements in the FN orders. The first FM court's finding of exigent circumstances granting plaintiff sole custody of the children and barring any unsupervised contact by defendant until she completed services was not erroneous. Specifically, defendant's refusal to comply with the FN order requiring therapeutic visitation and compliance with the recommendations in the psychological evaluation underscored the need for the court's order since the FN matter was still active and its orders were controlling.

Turning to defendant's contention the court erred in its December 2024 orders, we note those orders were entered after the FN litigation was terminated. The FN court's final termination order of November 22, 2024, required any "modification" of custody must be sought in the FM matter. We therefore conclude, at that point, the FN final order was the controlling custody order subject to modification based only on a showing of changed circumstances.

We note, the FN court was involved with the parties and children for a significant period of time and substantial evidence was provided through

14

therapists and experts in that proceeding addressing the custody plan that served the children's best interests. We further conclude, as did the trial court, that defendant failed to complete conditions precedent in the FN order prior to moving for a change of custody in the FM matter. Although not specifically noted by the trial court, we conclude defendant's refusal to abide by the FN orders, which was subsequently incorporated in the first FM court's November 12, 2024 order, was a necessary condition precedent to defendant showing a changed circumstance. Due to this failure, we are satisfied defendant did not meet her burden of establishing a prima facie change of circumstances to modify the prior custody orders. We agree with the second FM court's findings that defendant was making a clear attempt to circumvent the requirements set out in the FN orders by filing applications in the FM action seeking sole custody and unsupervised parenting time of the children.

We are further unpersuaded by defendant's arguments the trial court's references to the expert reports in its findings to support its order continuing sole custody of the children to plaintiff were erroneous. We note the November FN termination order stated "if there is any application to the [FM] court for any changes in custody/visitation, the Division must be notified and is authorized to release its records to the court for a review." A review of the record

demonstrates that the FM court reviewed substantial information from experts and therapists contained in the Division records. Those records demonstrated that defendant underwent psychological evaluations in September 2023, yielding diagnoses of post-traumatic stress disorder and Paranoid Personality Disorder, with recommendations for trauma-informed CBT, further evaluations, and therapy, but failed to comply. Moreover, the expert opinions defendant relied on to support her application were reviewed by the FN court prior to entering its orders[3], including its final order granting plaintiff sole custody and barring defendant from having contact with the children due to her failure to complete the services ordered.

Additionally, both FM courts referenced the expert evaluations and recommendations. In its November 12 amended order, the court noted that defendant did not demonstrate compliance with recommended services and that "was the likely reason why the FN court has required defendant's contact with the children to remain as therapeutic supervised visitation pending further order of the court."

Similarly, the second FM court found it reviewed defendant's voluminous exhibits—emails, letters, and documentation from various providers—but could

---

[3] We note, no orders in the FN matter were appealed.

A-1023-24

not ascertain compliance with DCPP's recommendations due to the disorganized nature of the filings and lack of certification. The court further found that recent service provider reports had recommended continuing supervised visitation due to defendant's persistent behavioral concerns.

We now address defendant's contentions the court erred by failing to consider "qualified expert testimony supporting her parental fitness [and] instead relying on unqualified expert opinions and inadmissible records" and conclude this argument is without merit. The court appropriately relied on evidence in the FN record and the Division's files to assess and reject defendant's motion for sole custody as there was substantial evidence in the motion record this was not in the children's best interests. We discern no error in the FM courts' review of those records or their findings relying on this information in making their custody determinations.

In addition, we note the December orders denied defendant's motion "without prejudice." Therefore, defendant had the right to refile her application and seek an adjudication on the merits once she provided cogent, organized, and understandable submissions for the court's consideration.

B.

We now turn to defendant's contention the court erred by permitting/employing a series of procedural irregularities, including the timing and treatment of her cross-motion, the denial of oral argument, the refusal to consider her voluminous documentary submissions, and its medical determinations made without expert support, which collectively deprived her of due process. Since we have addressed the expert issues in Section II-A, we address defendant's remaining arguments hereafter.

Procedural due process requires notice and an opportunity to be heard. Mettinger v. Globe Slicing Machine Co., 153 N.J. 371, 389 (1998); see also Doe v. Poritz, 142 N.J. 1, 106 (1995). "Due process is not a fixed concept . . . but a flexible one that depends on the particular circumstances." Doe, 142 N.J. at 106. "Fundamentally, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner." Ibid.

The record clearly shows the trial court considered the merits of defendant's cross-motion and motion for reconsideration and addressed the substance of each of her arguments in its November 12, 2024 amended order and statement of reasons. The court's decision specifically stated "this [c]ourt is also choosing to address [d]efendant's [m]otion for [r]econsideration, filed November 10, 2024 that is largely duplicative and repetitive of what she alleges

in her [] cross-motion."  Because defendant was properly noticed and had a meaningful opportunity to be heard, we discern no violation of her due process rights.

Lastly, we address defendant's assertion that the court's failure to hold oral argument before entering the December 2024 orders requires reversal.  Rule 5:5-4(a) states:

> Motions in family actions shall be governed by R[ule] 1:6-2(b) except that, in exercising its discretion as to the mode and scheduling of disposition of motions, the court shall ordinarily grant requests for oral argument on substantive and non-routine discovery motions and ordinarily deny requests for oral argument on calendar and routine discovery motions.

This Rule has been interpreted as "mandating argument when significant substantive issues are raised and argument is requested."  Mackowski v. Mackowski, 317 N.J. Super. 8, 14 (App. Div. 1998).  "The denial of such argument deprives litigants of an opportunity to present their case fully to a court."  Ibid.  "However, the [Rule] still permits a trial court to exercise its discretion to deny such requests, even in cases involving 'substantive' issues."  Palombi v. Palombi, 414 N.J. Super. 274, 285 (App. Div. 2010).  The intention of this Rule

> is to give the trial judge the option of dispensing with oral argument . . . when no evidence beyond the motion

19

papers themselves and whatever else is already in the record is necessary to a decision.  In short, it is the sole purpose of this rule to dispense with what is regarded as unnecessary or unproductive advocacy.

[Fusco v. Fusco, 186 N.J. Super. 321, 328-29 (App. Div. 1982).]

While oral argument may be desirable in factually complex family matters, it is not required absent a genuine dispute of material facts.  Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007); P.T. v. M.S., 325 N.J. Super. 193, 214 (App. Div. 1999).

We have previously determined defendant's motion and OTSC failed to present genuine factual disputes of a changed circumstance from the custody provisions set forth in the final November FN termination order.  Therefore, we conclude the trial court's decision not to hold oral argument was not an abuse of discretion nor a violation of defendant's due process rights since defendant's written applications failed to provide a prima facie change of circumstances on their face.

To the extent we have not otherwise addressed any of the defendant's remaining arguments, we determine they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-1023-24